## MINNESOTA *v.* UNITED STATES.

No. 73.   Argued November 10, 1938.—Decided January 3, 1939.

*Mr. Ordner T. Bundlie,* Assistant Attorney General of Minnesota, with whom *Mr. William S. Ervin,* Attorney General, was on the brief, for petitioner. *Mr. Bert Mc-Mullen* entered an appearance for petitioner.

*Mr. Mac Asbill,* with whom *Solicitor General Jackson, Assistant Attorney General McFarland,* and *Mr. Oscar Provost* were on the brief, for the United States.

By leave of Court, *Mr. John H. Hougen* filed a brief, as *amicus curiae,* on behalf of the Minnesota Chippewa Tribe of Indians et al., in support of petitioner.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Minnesota brought in a court of the State this proceeding to take by condemnation pursuant to its laws a right of way for a highway over nine allotted parcels of land which form parts of the Grand Portage Indian Reservation, granted for the Band of Chippewa Indians of Lake Superior by Treaty of September 30, 1854 (10 Stat. 1109) and the Act of Congress, January 14, 1889, c. 24, 25 Stat. 642. The parcels had been allotted in severalty to individual Indians by trust patents. The highway was located pursuant to requirements of the Constitution of the State. It was not shown that authority had been obtained from the Secretary of the Interior for the construction of the highway over the Indian lands. The petition named as persons interested the owners under

the Indian allotments, the Superintendent of the Consolidated Chippewa Agency, and the United States, as holder of the fee in trust.

The United States was named as a party defendant. The United States Attorney, appearing specially for the United States and generally for the other respondents, filed a petition for the removal of the cause to the federal court. He and counsel for the State stipulated that the cause "may be [so] removed." The state court ordered removal. In the federal court, the United States, appearing specially, moved to dismiss the action on the ground that it had not consented to be sued and that the state court had no jurisdiction of the action or over the United States. The motion to dismiss was denied on the ground that the United States is not a necessary party, since "consent . . . to bring these proceedings against the Indian allottees has been expressly granted and given by the United States to the State of Minnesota, pursuant to 25 United States Code Annotated, Section 357" (Act of March 3, 1901, c. 832, § 3, 31 Stat. 1058, 1083–84), the second paragraph of which provides:

"That lands allotted in severalty to Indians may be condemned for any public purpose under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned, and the money awarded as damages shall be paid to the allottee."

The petition for condemnation was granted.

Upon appeal by the United States, the Circuit Court of Appeals held that the State was without power to condemn the Indian lands unless specifically authorized so to do by the Secretary of the Interior, as provided in § 4 of the Act of 1901, which provides:

"That the Secretary of the Interior is hereby authorized to grant permission, upon compliance with such requirements as he may deem necessary, to the proper

State or local authorities for the opening and establishment of public highways, in accordance with the laws of the State or Territory in which the lands are situated . . . through any lands which have been allotted in severalty to any individual Indians . . . but which have not been conveyed to the allottees with full power of alienation."

It held, further, that as such authorization had not been shown, the United States had not consented to the maintenance of the condemnation suit against it; that the court was without jurisdiction to proceed; and that the fact that removal from the state court to the federal court had been obtained by the United States Attorney by stipulation had not effected a general appearance. The Circuit Court of Appeals, therefore, reversed the judgment of the District Court with directions to dismiss. 95 F. 2d 468. Certiorari was granted because of alleged conflict with the established administrative practice under the applicable statutes and the importance of the question presented.

The State contends that it had power, and its courts jurisdiction, to condemn the allotted lands without making the United States a party to the proceedings: (1) because authorized so to do by the second paragraph of § 3 of the Act of March 3, 1901, quoted above; (2) because authorized so to do by the Treaty of September 30, 1854, 10 Stat. 1109, 1110, approved by Congress January 14, 1889, which provided in Article 3—

"All necessary roads, highways, and railroads, the lines of which may run through any of the reserved tracts, shall have the right of way through the same, compensation being made therefor as in other cases."

(3) because the State, in its sovereign capacity and in the exercise of its governmental functions in the location and construction of a constitutional state truck highway

required to be so located and constructed by its constitution and laws, may, without express congressional authority therefor, exercise its inherent power of eminent domain for such purpose over lands so allotted in severalty to individual Indians.

The Minnesota Chippewa Tribe and the Grand Portage-Grand Marais Band thereof filed by the tribal attorney a brief praying that the judgment of the Circuit Court of Appeals be reversed and that of the District Court affirmed.

*First.* The United States is an indispensable party defendant to the condemnation proceedings. A proceeding against property in which the United States has an interest is a suit against the United States. *The Siren,* 7 Wall. 152, 154; *Carr* v. *United States,* 98 U. S. 433, 437; *Stanley* v. *Schwalby,* 162 U. S. 255. Compare *Utah Power & Light Co.* v. *United States,* 243 U. S. 389. It is confessedly the owner of the fee of the Indian allotted lands and holds the same in trust for the allottees. As the United States owns the fee of these parcels, the right of way cannot be condemned without making it a party.[1]

---

[1] The fee of the United States is not a dry legal title divorced from substantial powers and responsibilities with relation to the land. *United States* v. *Rickert,* 188 U. S. 432; compare *Tiger* v. *Western Investment Co.,* 221 U. S. 286; *Brader* v. *James,* 246 U. S. 88. In the case of patents in fee with restraints on alienation it is established that an alienation of the Indian's interest in the lands by judicial decision in a suit to which the United States is not a party has no binding effect but that the United States may sue to cancel the judgment and set aside the conveyance made pursuant thereto. *Bowling & Miami Investment Co.* v. *United States,* 233 U. S. 528; *Privett* v. *United States,* 256 U. S. 201; *Sunderland* v. *United States,* 266 U. S. 226. In the stronger case of a trust allotment, it would seem clear that no effective relief can be given in a proceeding to which the United States is not a party and that the United States is therefore an indispensable party to any suit to establish or acquire an interest in the lands. Compare *McKay* v. *Kalyton,* 204 U. S. 458.

The exemption of the United States from being sued without its consent extends to a suit by a State. Compare *Kansas* v. *United States,* 204 U. S. 331, 342; *Arizona* v. *California,* 298 U. S. 558, 568, 571, 572. Compare *Minnesota* v. *Hitchcock,* 185 U. S. 373, 382–387; *Oregon* v. *Hitchcock,* 202 U. S. 60. Hence Minnesota cannot maintain this suit against the United States unless authorized by some act of Congress.

Minnesota contends that the United States is not an indispensable party. It argues that since the second paragraph of § 3 of the Act of March 3, 1901, provides that "the money awarded as damages shall be paid to the allottee," the United States has no interest in the land or its proceeds after the condemnation is begun.[2] Under § 5 of the General Allotment Act, Act of February 8, 1887, c. 119, 24 Stat. 388, 389, U. S. C. Title 25, § 348, the Indians' interest in these allotted lands was subject to restraints on alienation;[3] and by § 2 of the Indian Reorganization Act, Act of June 18, 1934, c. 576, 48 Stat. 984, U. S. C. Title 25, § 462, restraints on alienation were extended. The clause quoted may not be interpreted as freeing the allottee's land from the restraint imposed by

---

[2] The extent of the restraints on alienation contained in § 5 of the General Allotment Act was clarified and modified to some extent by subsequent legislation. E. g., Act of May 27, 1902, c. 888, § 7, 32 Stat. 245, 275; Act of May 8, 1906, c. 2348, 34 Stat. 182; Act of March 1, 1907, c. 2285, 34 Stat. 1015, 1018; Act of May 29, 1908, c. 216, 35 Stat. 444; Act of June 25, 1910, c. 431, §§ 1–5, 36 Stat. 855–56; Act of May 18, 1916, c. 125, 39 Stat. 123, 127; U. S. C. Title 25, §§ 349, 372, 373, 378, 379, 394, 403, 404, 405, 408. Under § 4 of the Indian Reorganization Act, applicable to all Indian Reservations unless a majority of the adult Indians vote against its application, the transferability of restricted Indian lands is greatly limited. Act of June 18, 1934, c. 576, 48 Stat. 984, U. S. C. Title 25, § 464.

[3] Compare the Act of March 1, 1907, c. 2285, 34 Stat. 1018, U. S. C. Title 25, § 405; Act of June 25, 1910, c. 431, §§ 4, 8, 36 Stat. 856–857; U. S. C. Title 25, §§ 403, 406.

other acts of Congress. As the parcels here in question were restricted lands, the interest of the United States continues throughout the condemnation proceedings. In its capacity as trustee for the Indians it is necessarily interested in the outcome of the suit—in the amount to be paid. That it is interested, also, in what shall be done with the proceeds is illustrated by the Act of June 30, 1932, c. 333, 47 Stat. 474, U. S. C. Title 25, § 409a, under which the Secretary of the Interior may determine that the proceeds of the condemnation of restricted Indian lands shall be reinvested in other lands subject to the same restrictions.[4]

*Second.* Minnesota contends that Congress has authorized suit against the United States. It is true that authorization to condemn confers by implication permission to sue the United States. But Congress has provided generally for suits against the United States in the federal courts. And it rests with Congress to determine not only whether the United States may be sued, but in what courts the suit may be brought. This suit was begun in a state court. The fact that the removal was effected on petition of the United States and the stipulation of its attorney in relation thereto are facts without legal significance. Where jurisdiction has not been con-

---

[4] "Whenever any nontaxable land of a restricted Indian of the Five Civilized Tribes or of any other Indian tribe is sold to any State, county, or municipality for public-improvement purposes, or is acquired, under existing law, by any State, county, or municipality by condemnation or other proceedings for such public purposes, or is sold under existing law to any other person or corporation for other purposes, the money received for said land may, in the discretion and with the approval of the Secretary of the Interior, be reinvested in other lands selected by said Indian, and such land so selected and purchased shall be restricted as to alienation, lease or incumbrance, and nontaxable in the same quantity and upon the same terms and conditions as the nontaxable lands from which the reinvested funds were derived, and such restrictions shall appear in the conveyance." See also note 7, *infra.*

ferred by Congress, no officer of the United States has power to give to any court jurisdiction of a suit against the United States. Compare *Case* v. *Terrell*, 11 Wall. 199, 202; *Carr* v. *United States*, 98 U. S. 433, 435–39; *Finn* v. *United States*, 123 U. S. 227, 232–33; *Stanley* v. *Schwalby*, 162 U. S. 255, 270; *United States* v. *Garbutt Oil Co.*, 302 U. S. 528, 533–35. If Congress did not grant permission to bring this condemnation proceeding in a state court, the federal court was without jurisdiction upon its removal. For jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. Where the state court lacks jurisdiction of the subject matter or. of the parties, the federal court acquires none, although in a like suit originally brought in a federal court it would have had jurisdiction. *Lambert Run Coal Co.* v. *Baltimore & Ohio R. Co.*, 258 U. S. 377, 383; *General Investment Co.* v. *Lake Shore & M. S. Ry. Co.*, 260 U. S. 261, 288.

*Third.* Minnesota contends that Congress authorized suit in a court of the state by providing in the second paragraph of § 3 of the Act of March 3, 1901, quoted above, for "condemnation of" lands allotted in severalty to Indians "in the same manner as land owned in fee." But the paragraph contains no permission to sue in the court of a state. It merely authorizes condemnation for "any public purpose under the laws of the State or Territory where located." There are persuasive reasons why that statute should not be construed as authorizing suit in a state court. It relates to Indian lands under trust allotments—a subject within the exclusive control of the federal government. The judicial determination of controversies concerning such lands has been commonly committed exclusively to federal courts.[5]

---

[5] Compare *McKay* v. *Kalyton*, 204 U. S. 458; 28 Stat. 305; 31 Stat. 760; U. S. C. Title 25, § 345. The United States argues that a statute granting permission to sue the United States must be construed to apply only to the federal courts unless there is an explicit

Minnesota asserted in support of its interpretation of the paragraph that by long established administrative practice such condemnation proceedings are brought in the state court and without making the United States a party.[6] The assertion was denied by the Government. As the brief of neither counsel furnished adequate data as to the administrative practice, they were requested at the oral argument to furnish the data thereafter. From the report then submitted by the Solicitor General it appears that throughout a long period the Secretary of the Interior has insisted in Minnesota and in other States, that condemnation suits must be brought in a federal court and that the United States must be made a party defendant.[7]

---

reference to the state tribunals, citing *Stanley* v. *Schwalby,* 162 U. S. 255, 270; *United States* v. *Inaba,* 291 F. 416, 418; *United States* v. *Deasy,* 24 F. 2d 108, 110. This is not universally true even as to suits against the United States itself. *United States* v. *Jones,* 109 U. S. 513. And in many instances the state courts have been held to have jurisdiction of suits against the instrumentalities and officers of the United States which directly affect its property interests without such specific statutory authorization. *Missouri Pacific R. Co.* v. *Ault,* 256 U. S. 554; *Sloan Shipyards* v. *United States Shipping Board,* 258 U. S. 549, 568–69; *Olson* v. *United States Spruce Production Corp.,* 267 U. S. 462; *Federal Land Bank* v. *Priddy,* 295 U. S. 229, 235–37. Compare *Davis* v. *L. N. Dantzler Lumber Co.,* 261 U. S. 280.

[6] In 35 Land Decisions 648 the Acting Secretary of the Interior handed down on June 29, 1907, an opinion which recognized, without any discussion, the validity of a condemnation proceeding brought under the second paragraph of the Act of March 3, 1901, in a state court, it not appearing that the United States was joined as a party.

[7] See also Regulation 69½ of the Regulations of the Department of the Interior, "Concerning Rights of Way over Indian Lands," adopted in the general revision of April 7, 1938, which provides: "As the holder of the legal title to allotted Indian lands held in trust, the United States must be made a party to all such condemnation suits and the action must be brought in the appropriate federal district court, the procedure, however, to follow the provisions of the State law on the subject, so far as applicable."

As the lower court had no jurisdiction of this suit, we have no occasion to consider whether, as a matter of substantive law, the lack of assent by the Secretary of the Interior precluded maintenance of the condemnation proceeding.

*Affirmed.*