LAMBERT v. RECONSTRUCTION
FINANCE CORPORATION et al.

Civ. No. 7736.

District Court, E. D. New York.

April 21, 1947.

Cadwalader, Wickersham & Taft, of New York City (Walter Bruchhausen, of New York City, of counsel), for plaintiff.

J. Vincent Keogh, U. S. Atty., of New York City, and Frank J. Parker, Asst. U. S. Atty., of Brooklyn, N. Y., for Reconstruction Finance Corp.

John J. Ryan, of New York City (Bleakley, Platt, Gilchrist & Walker, and Frank A. Fritz, all of New York City, of counsel), for defendant Republic Aviation Corp.

KENNEDY, District Judge.

The plaintiff moves for an injunction restraining the defendants during the pendency of the suit against acquiring, selling, encumbering or disposing of certain real property in the County of Suffolk; the defendants ask that the complaint be dismissed because the United States of America is an indispensable party to the suit.

Prior to December 19, 1940, the plaintiff was the owner of an undivided one-half interest in a tract of land containing 197.41 acres situated in the Town of Babylon. She was also the sole owner in fee of a tract consisting of 28.71 acres in the same township. The United States of America acquired these parcels by a proceeding in

510

this Court.[1] Plaintiff also claims that she was formerly the owner in fee of 40.562 acres of real property in the Village of Farmingdale. This land was part of a tract which was acquired by the United States Government in another proceeding in this Court; the date of the acquisition was July 19, 1942.[2]

Briefly stated, it is plaintiff's claim that, since she was the person from whom the property affected by the suit was originally acquired, she has an absolute right, given her by statute, 50 U.S.C.A.Appendix, § 1632(d), to repurchase it, and that this right of hers has been invaded, because as of January 1, 1946, the War Assets Administrator and the Reconstruction Finance Corporation entered into a lease with the defendant Republic Aviation Corporation. The lease embraces the property which plaintiff formerly owned, and it gives to Republic Aviation Corporation an option to purchase.[3] In her complaint plaintiff asks for a declaratory judgment establishing her preference to repurchase the property which she formerly owned, decreeing the lease in question to be invalid, and requiring the defendant Reconstruction Finance Corporation to accept plaintiff's offer to purchase the real property and to convey it to her.

The defendants urge that the property in suit is not subject to a preference under the statute invoked by plaintiff, 50 U.S.C.A. Appendix, § 1632(d), because it is not "real property" under that statute, having been classified by the War Assets Administrator as an industrial plant, or factory, or land essential to the use of such a facility, 50 U.S.C.A.Appendix, § 1632(c). The defendants also assert that title to the land which would be affected by any judgment in the suit is and always has been in the United States of America, and that the action cannot, therefore, be maintained.

At the argument of the motion I told counsel I felt called upon to decide in limine the question whether the United States of America is, in fact, an indispensable party. I proceed to consider that question alone, although both the moving and answering affidavits discuss very fully the chronology of the transactions which resulted in the lease, and it will be necessary to make some passing mention of these merely for clarity.

█ The complaint squarely alleges that title to the land, which plaintiff seeks to acquire by this suit, is now in Reconstruction Finance Corporation, or was when plaintiff offered to purchase it. If that is so, then the objection that the United States of America is an indispensable party disappears. 15 U.S.C.A. § 604; Reconstruction Finance Corporation v. J. G. Menihan Corporation, 312 U.S. 81, 83, 61 S.Ct. 485, 85 L.Ed. 595. On the argument, however, the defendants produced the lease which is attacked by the plaintiff, and it plainly appears that the War Assets Administrator is one of the lessors. Counsel then explained that Reconstruction Finance Corporation is also mentioned as a lessor in the lease, not because it has or ever had title to any of the parcels which are the subject of plaintiff's claim, but because the lease covers additional parcels not here involved, title to which *was* in Reconstruction Finance Corporation at the time of the making of the lease. In support of their contention that the United States of America is and always has been the sole owner of the land which plaintiff seeks to acquire, the defendants have filed affidavits asserting unequivocally that the United States of Amer-

[1] United States, Petitioner, v. 243.22 Acres of Land in Town of Babylon, County of Suffolk, State of New York et al., D.C.E.D.N.Y., 2 Cir., 1942, 129 F.2d 678, certiorari denied 317 U.S. 698, 63 S.Ct. 441, 87 L.Ed. 558. The Circuit Court dismissed an appeal from an order, D.C.E.D.N.Y., 43 F.Supp. 805; Id., D.C., and affirmed three other orders; Id., D.C.E.D.N.Y., 41 F.Supp. 469, 41 F.Supp. 805, and 43 F.Supp. 561. See also United States v. Lambert, 2 Cir. 1944, 146 F.2d 469.

[2] United States of America, Petitioner, v. 54 Acres of Land, more or less, situated in the Village of Farmingdale, Town of Babylon, County of Suffolk, State of New York, and American Agricultural Chemical Corporation, et al., E.D.N.Y., No. 9912, no opinion for publication.

[3] Although the effective date of the lease is January 1, 1946, it was actually executed on December 26, 1946.

ica acquired two of the parcels in suit in the latter part of 1940, and the third parcel on July 21, 1943, and that the records of Suffolk County (an abstract of title is furnished) show no conveyance by the United States of America. The Deputy Regional Director for Real Property Disposal in the Office of the War Assets Administrator says that title is and always has been in the United States of America and furnishes a certificate by an attorney employed in the Corps of Engineers of the War Department, and an affidavit by the same person, setting forth that at the time of the argument of the motion the real estate records of the Office of the Division Engineer showed no unrecorded deed conveying out of the United States title to the land involved.

The plaintiff answers all this, not so much by denying that the record title to the parcels in suit is presently in the United States, as by asserting that her statutory priority is, nevertheless, intact, because the War Assets Administrator improperly classified the land as an airport or an airport facility. From this premise, plaintiff reasons that the War Assets Administrator has somehow violated the law in entering into the lease, and that even without the presence of the United States as a party to the suit, plaintiff can secure the relief which she seeks. As I have indicated, it would be most inappropriate to pass on any of these questions without determining whether the United States, assuming it to be the owner of record, is an indispensable party. But it may make the situation clearer if I mention, even briefly, what plaintiff's contentions in this connection are.

■ The papers disclose that the property in suit was declared surplus "preliminarily" on May 27, 1946, and that the War Assets Administrator classified the property as industrial on July 31, 1946. (Apparently, prior to that date and on May 29, 1946, the Price Review Board of the War Assets Administration had approved the lease of the parcels in suit and others to the Republic Aviation Corporation.) The property was finally declared surplus on September 20, 1946, and the lease, as I have mentioned, was entered into on December 26, 1946. Plaintiff says that all of this was in violation of Regulation No. 10 of the Rules and Regulations of the War Assets Administration (11 F.R. 949), which requires that the disposal agency shall widely publicize industrial real property, and shall not dispose of it until it has been publicly advertised for sale for a period of at least 14 days. Plaintiff also attacks the War Assets Administrator's action in classifying the property as industrial, because, while that determination was reached after the Reconstruction Finance Corporation had "preliminarily" declared the property surplus (May 27, 1946), it occurred *before* the formal and final declaration of surplus was delivered to the War Assets Administration (September 19, 1946). Being satisfied that the property is, therefore, still subject to her priority under the statute, 50 U.S.C.A.Appendix, § 1632(d), plaintiff urges that conveyance to her is a mere ministerial act, and under the doctrine of Marbury v. Madison, 1803, 5 U.S. 137, 2 L.Ed. 60, which she cites, she says that there is no immunity from suit on the part of a government official who fails to perform a ministerial act commanded by a statute (i.e., the reconveyance to her of the property which she formerly owned). Of course, this argument overlooks the fact that in Marbury v. Madison, supra, the government official against whom an order was sought, and who in this case would probably be the War Assets Administrator, was, in fact, a party to the proceeding. Moreover, plaintiff's argument assumes that the Administrator's classification of the property as industrial is subject to review by the courts, a point which I do not decide, but concerning which I have considerable doubt. No attempt need be made to solve these questions until a larger one has been set at rest: has the United States such an interest in the property that the mere maintenance of the suit interferes with the government "behind its back." Holmes, J., in United States ex rel. Goldberg v. Daniels, 1913, 231 U.S. 218, 34 S.Ct. 84, 58 L.Ed. 191.

There have been cases in which a "procedural dilemma" has been created by the assertion that the United States is an indispensable party. Cf. First Nat. Bank of Holdenville, Okl. v. Ickes, App.D.C., 1945,

154 F.2d 851, 854. This is notably true when suit is brought against a government official who is charged with tortious conduct under circumstances where he might have gained no immunity from suit by virtue of his office. Very often such a situation presents involved fact questions which, if resolved in one way, would deprive the court of jurisdiction, whereas a different decision of those same questions would entitle the plaintiff to relief. But I think that the dilemma does not exist here. The interest or noninterest of the United States in the land which is the subject of the suit seems to me to be a purely jurisdictional fact. Cf. Hagens v. United Fruit Co., 2 Cir., 1943, 135 F.2d 842. A reading of the prayer for relief shows that if the United States has an "interest" in the property covered by the lease here sought to be annulled, then the Court is powerless to render a proper decree (one familiar test of the indispensability of a party).[4]

■ I do not believe that the procedural dilemma, spoken of in other cases, exists here. For plaintiff could never hope to controvert at a trial two facts: (1) that the United States, in the person of the War Assets Administrator, is a party to the lease which is sought to be invalidated, and (2) that, according to the records of Suffolk County, the United States is the record owner of the title to the land affected by the lease—land with respect to which plaintiff asks a remedy in the nature of specific performance of a contract to convey.[5] But plaintiff urges in her affidavits and in her brief that neither the United States nor the War Assets Administrator is an indispensable party to the suit, because the Reconstruction Finance Corporation actually "acquired" the property, or at least part of it, pursuant to statute, 15 U.S.C.A. § 606b, and, even if a conveyance was never really executed to the Reconstruction Finance Corporation, the corporation could, under that statute, have compelled such action on the part of the Secretary of Commerce.[6] Moreover, plaintiff says that as the result of a number of incidents she will be able to demonstrate at a trial that Reconstruction Finance Corporation has held itself out as the owner of the tract, either in its own name or that of another suable subsidiary. For example, plaintiff says that on June 23, 1944, an official of the Defense Plant Corporation claimed it was the owner of one of the parcels, when local zone changes were sought. The "preliminary" declaration of surplus (May 27, 1946), also exe-

---

[4] Barney v. City of Baltimore, 1868, 73 U.S. 280, 284, 18 L.Ed. 825, 826, quoting from Shields v. Barrow, 1855, 58 U.S. 130, 139, 15 L.Ed. 158, 160.

[5] On the argument, when the lease was produced, I pointed out to counsel there could hardly be a bona fide dispute about where the record title to the property was. I asked counsel for the defendants to make available to counsel for the plaintiff any material in their possession bearing upon this question. Weeks later the briefs were submitted, and, although by that time the answering affidavits of the defendants disclosed not only the terms of the lease, but also the situation reflected by the land records of Suffolk County, the plaintiff's brief does not even suggest that the record title is not in the United States, nor that its agent, the War Assets Administrator, is not a party to the lease. I had in mind that obviously the location of a record title might present an issue of fact, at least under some circumstances. And even were this an application for summary judgment by the defendants, the existence of such an issue could preclude a final determination, certainly if the discovery procedure, for example, might show that the record title was elsewhere. Cf. Bozant v. Bank of New York, 2 Cir., 1946, 156 F.2d 787. But the natural reluctance of any court to make a preliminary and piecemeal decision of what on the surface might seem to be a "fact issue" certainly ought to be overcome when (1) the question for decision is a purely jurisdictional fact, such as the indispensability of a party, and (2) the so-called "fact issue" concerns itself with who is the owner of the record title to real estate. I would not be understood as saying that there is here disclosed a mere paper title in the United States: this is the very least that is shown.

[6] It seems to be clear that the first taking (December 19, 1940) was at the request of the Secretary of War under the provisions of 50 U.S.C.A.Appendix, § 1171 and 40 U.S.C.A. § 258a; the second taking (July 19, 1943) was at the request of the Reconstruction Finance Corporation under 15 U.S.C.A. §§ 601-617.

cuted by officials of Reconstruction Finance Corporation, employed a symbol ("Plancor") which plaintiff urges is a claim of ownership by Defense Plant Corporation. Plaintiff says the Reconstruction Finance Corporation has expended its monies in improving plant facilities, and that Republic Aviation Corporation, in its corporate financial reports, has characterized Reconstruction Finance Corporation as the owner. She says that the Surplus Property Administrator[7] some time ago issued, and still continues to issue, printed pamphlets offering the property for sale, and describing it as the property of Defense Plant Corporation. I suspect that these apparent inconsistencies are explained by the fact that during the period prior to the time when the property was declared surplus, Reconstruction Finance Corporation, and possibly Defense Plant Corporation, had control of this property and thus came within the statutory definition of an "owning agency," 50 U.S.C.A.Appendix, § 1612 (b), even though neither of those corporations was the owner in the legal sense (i.e., the holder of the record title). But, even supposing that defendant Reconstruction Finance Corporation, in fact, held itself out as owner of the property, it is clear to me that the United States, the holder of the title, would still be an indispensable party to a suit like this, which has for its object the cancellation of a lease executed by the War Assets Administrator as lessor, and the further object of a decree directing conveyance of the property. Certainly, the plaintiff is in no stronger position than was the State of Minnesota in State of Minnesota v. United States, 1939, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235. There the United States merely held the fee in trust for Indian allottees. The State of Minnesota was attempting to condemn land for a right of way. It was held that the suit could not be maintained, absent a consent by the United States. True enough, the United States was made a party to the suit originally when it was commenced in the State court, a circumstance which is not to be found here. But the principle of the holding is not affected by this. What is a suit against the sovereign is to be determined by the "essential nature and effect of the proceeding, as it appears from the entire record." Ex parte State of New York, 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057, 1062.

■ What then would be the "essential nature and effect" of a temporary injunction and ultimately a trial in this case, supposing the plaintiff to prevail on every point, even to the extent of establishing that Reconstruction Finance Corporation had, in fact, posed as the owner of the property? How would the decree be framed? If it ordered the cancellation of the lease, as plaintiff demands, it would excuse the payment of rent by Republic Aviation Corporation to a government official, the War Assets Administrator. If the decree ordered Reconstruction Finance Corporation to convey the property to the plaintiff, upon compliance with the terms of the statute concerning the purchase price, 50 U.S.C.A.Appendix, § 1632(d), it would mean that to be effective some sort of compulsion, not covered by the decree, would be necessary against the War Assets Administrator, not only to agree upon the purchase price, but also to execute and deliver a deed. There would thus be either one of two results, both abhorrent to equity: (1) a decree running against Reconstruction Finance Corporation which would be brutum fulmen, or (2) a decree which would, in point of fact, but by indirection, coerce a course of action by a government official, who could not be coerced directly by any court—it would be issued against the sovereign "behind its back". And so, even if the "interest" of the United States, as disclosed by the record, is merely that of lessor and holder of the record title, that interest, tested as it must be in the light of any decree to be framed, makes it an indispensable party. And it does not consent to the suit.

The motion for an injunction pending suit is, therefore, denied, the temporary injunction now outstanding is dissolved,

---

[7] The functions of the Surplus Property Board devolved upon War Assets Administration as the result of Executive Order No. 9689, January 31, 1946, 11 F.R. 1265, amended by Executive Order No. 9707, March 25, 1945, 50 U.S. C.A.Appendix, § 1614a note, 11 F.R. 3149.

and on the cross-motion of the defendants the complaint is dismissed, solely on the ground that the United States is an indispensable party. Submit order.