**F. G. VOGT & SONS, Inc. v. UNITED. STATES.**

**No. 7793.**

United States District Court
E. D. Pennsylvania.

Sept. 20, 1948.

930

Saul, Ewing, Remick & Saul, Montgomery, McCracken, Walker & Rhoads, Jenkins, Bennett & Jenkins and Strong, Sullivan, Saylor & Ferguson, all of Philadelphia, Pa., for receivers.

Thomas. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., for defendant.

McGRANERY, District Judge.

This is a suit under the Act of August 7, 1946, ch. 864, 60 Stat. 902, 41 U.S.C.A. § 106 note, also known as the War Contracts Hardship Claims Act. Briefly, that Act provides that where work, supplies, or services have been furnished under a war contract, the department or agency concerned is authorized to "consider, adjust, and settle equitable claims of contractors * * * for losses * * * incurred * * * without fault or negligence * * *" on the part of the contractor. However, Section 3 of the Act further provides that: "Claims for losses shall not be considered unless filed with the department or agency concerned within six months after the date of approval of this Act, and *shall be limited to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945 * * *.*" (Emphasis supplied.)

On February 4, 1947, plaintiff filed a claim for $212,483.67 with the War Department covering its net loss on government contracts for the period between September 15, 1940, and August 14, 1945. This claim was denied on August 28, 1947, by the War Contracts Hardship Claims Board acting on behalf of the War Department.

Under Section 6 of the Act, whenever any claimant is dissatisfied with the action of a department or agency in denying his claim under the Act, he may, within six months, file a petition in any District Court of competent jurisdiction seeking a determination of the equities involved. in his claim. Therefore, on August 7, 1947, plaintiff filed with this Court his complaint in the instant case.

The government has filed a motion to dismiss, alleging that the suit must fail for three reasons: (1) no written request for relief was filed by plaintiff in accordance with section 3 of the Act. (2) relief would not have been granted plaintiff under the First War Powers Act of 1941, 50 U.S.C.A.Appendix § 601 et seq., and, therefore, cannot be granted now and (3) the United States has not consented to suit in the Act relied upon.

For purposes of the motion to dismiss. the facts may be taken as follows: Claimant, F. G. Vogt and Sons, Inc., during the period covered by its claim, was engaged in the meat packing business, consisting principally of the slaughtering of hogs and production of pork products. In this period, Vogt incurred losses in performance of various contracts with the War, Navy and Agriculture Departments. Up to August 27, 1944, these contracts were voluntary, but after this date and continuing for about a year, set-aside orders issued by the War Food Administration required Vogt to allocate various percentages of its output to the Government. On February 28, 1945, Vogt filed with the .OPA a Protest to Maximum Price Regulation 148 which established the ceiling prices on pork products. This was denied on July 23, 1945. Beginning in February 1945, and continuing to August 14, 1945, Vogt also stamped on most of its invoices submitted to the War and Agriculture Departments the following: "These products are furnished in compliance with a compulsory government order. The price billed is that provided by the applicable O.P.A. regulations but this company does not agree to such price for its products. This company is entitled to just compensation under the Fifth Amendment to the Constitution and an appropriate claim for just compensation against the United States will be made."

The government contends that neither the protest to the OPA nor the stamp on the invoices constitutes a "written request for relief" within the meaning of the Act and the Executive Order.

■ The legislative history of the Act makes clear that it was designed to meet an inequitable situation caused by the end of hostilities. Under the First War Powers Act and Executive Order No. 9001, 50 U.S.C.A.Appendix, § 611 note, various departments were allowed, inter alia, to enter into amendments or modifications of contracts "with or without consideration", if the prosecution of the war was thereby facilitated. It has been observed that this standard is a "convenient abstraction * * * which may be based on facts which show, among other things, that the action is necessary (a) to ensure continued operations by the contractor, (b) to increase production by granting him financial assistance, (c) to encourage greater diligence on his part, (d) to protect him from the consequences of unforseen or unexpected events, or (e) to adjust a war contract to changed conditions and circumstances * * *." See Fain and Watt, War Procurement—A New Pattern in Contracts, 44 Col.L.Rev. 127, 199. However, when the Japanese government surrendered, some agencies and departments took the position that they no longer had the power to enter into such modifications, and it was to remedy the possible disparity of treatment that the statute in the instant case was passed. Thus, the Report of the House Committee states: "This bill would afford financial relief to those contractors who suffered losses in the performance of war contracts in those cases where the claim would have received favorable consideration under the First War Powers Act * * * if action had been taken by the Government prior to the capitulation of the Japanese Government. * * *"

And a statement made by Senator Mc-Carran, incorporated into the report, provides that: "* * * this matter shows the difference between one department which approves and goes forward with adjustments and another department which disapproves and says that after VJ-day it has no right to go forward with adjustments. Those were the two horns of the dilemma. In other words, one group were paid and another group were not paid; and those who suffered had to come to Congress and obtain specific provision for their relief, as set out in this bill." See U. S. Code Cong. Service 1946, 79th Cong., 2nd Sess., p. 1443.

■ Against this background, I do not feel that plaintiff's claim under the statute in the instant case should be sustained. Executive Order Oct. 5, 1946, No. 9786, properly issued under the Act, provides that: "No claim for loss under any contract * * * of a war agency shall be received or considered unless a written request for relief with respect thereto was filed with such war agency on or before August 14, 1945 * * *."

I feel that neither the Protest to Maximum Price Regulation 148 nor the stamped invoices satisfy this requirement of the Act. The former was not directed to the contracting agency and the latter was not the request for modification of government contracts contemplated by the statute. It is true that plaintiff's general object in any event was to increase its income and that a petition for an increase in OPA price, or a suit for just compensation seek to attain that end as much, if not more, than a request for relief in performance of a government contract. However, the statute was designed to deal only with claimants who resorted to the last method, and was intended to remedy the inequities resulting from disparity of treatment of war contractors by different agencies, after cessation of hostilities. Accordingly, therefore, the government's motion to dismiss this claim under the statute should be granted. Under this view of the case, it is unnecessary to deal with the government's other contentions in support of its motion.

■ However, in oral argument and in brief, plaintiff has advanced a cause of action for just compensation not directly set out in its complaint, i.e., that the set-aside and purchase orders at the inadequate OPA ceiling violated the Fifth Amendment. Cf. United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789. Apart from the difficulties plaintiff might have in proving this contention (cf. United States v. John J. Felin & Co., 334 U.S. 624, 68 S.Ct. 1238), it cannot assert a

claim here for the amount it seeks. Congress has indicated that the claim for over $10,000 which plaintiff urges as an alternative may be brought only in the Court of Claims. 28 U.S.C.A. §§ 1346, 1491; cf. 50 U.S.C.A.Appendix, § 721. "And it rests with Congress to determine not only whether the United States may be sued, but in what courts the suit may be brought." See State of Minnesota v. United States, 305 U.S. 382, 388, 59 S.Ct. 292, 295, 83 L.Ed. 235. Thus, under the recently enacted revision of the United States Code, Title 28, claims under the Hardship Claims Act will have to be asserted in the future only in the Court of Claims if they exceed $10,000 in amount. Act June 25, 1948, ch. 646, § 37, amending section 6 of the Act of Aug. 7, 1946, 41 U.S.C.A. § 106 note. Therefore, even though the doctrine of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, might otherwise be applicable, and that is, at least, questionable, I do not think it can lead to a different result on these facts. Cf. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058. An order will be entered in accordance with this opinion granting the motion to dismiss.