UNITED STATES of America,
Plaintiff,

v.

BENNETT COUNTY, SOUTH DAKOTA,
a Public Corporation, Defendant.

Civ. No. 65–91W.

United States District Court
D. South Dakota, W. D.

March 20, 1967.

Harold Doyle, U. S. Atty., Sioux Falls, S. D., for plaintiff.

Robert J. Parker, Martin, S. D., for defendant.

## MEMORANDUM DECISION

BECK, District Judge.

The Government's action, here, in procuring a temporary injunction against Bennett County, South Dakota, and thereafter to have it made permanent, stems from its claims that the County's previous operations in attempting to open a highway section line over and across lands located in that County, allotted to an Indian, under the Act of March 2, 1889, c. 405, 25 Stat. 888, were without the required permission from the Secretary of Interior, 25 U.S.C.A., Sec. 311, or in the alternative, rights which otherwise could only be acquired by proceedings in eminent domain, 25 U.S.C.A. Sec. 357.

A written stipulation settles all the material facts. Thus, that the lands affected are within Bennett County, in the Pine Ridge Indian Reservation, allotted to an Indian, as provided under the Act of 1889 and now under the terms thereof held in trust for Doyle Edwin and Newton A. Cummings, that the proposed road is the only reasonable access road to the ranch headquarters of one Richard W. Hodson, and that the purpose of the proposed operation is to improve the grading on that section line done in 1954.

As for the legal issue to be determined, it is as between the parties, stipulated: that it is restricted to the question whether or not the County has "the right to construct a highway along the section line bordering the trust lands in ques-

tion as a matter of law without the necessity of condemnation proceedings and the payment of just compensation."

■ A section line easement through an Indian Reservation or through any lands "which have been allotted in severalty to any individual Indian under any laws or treaties but which have not been conveyed to the allottee with full power of alienation", may not be acquired by a county in this state, without a previously granted permission from the Secretary of Interior or by like leave, with the usual conditions imposed under a judgment in eminent domain.

Such in context is the import of Section 311 and 43 U.S.C.A. § 931a, carrying those grants into effect:

"The Secretary of the Interior is authorized to grant permission, upon compliance with such requirements as he may deem necessary, to the proper State or local authorities for the opening and establishment of public highways, in accordance with the laws of the State or Territory in which the lands are situated, through any Indian reservation or through any lands which have been allotted in severalty to any individual Indian under any laws or treaties but which have not been conveyed to the allottee with full power of alienation. Mar. 3, 1901, c. 832, § 4, 31 Stat. 1084."

"The Attorney General, whenever he deems it advantageous to the Government and upon such terms and conditions as he deems advisable, is hereby authorized on behalf of the United States to grant to any State, or any agency or political subdivision thereof, easements in and rights-of-way over lands belonging to the United States which are under his supervision and control * * *."

See also State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235, United States v. State of Minnesota, 113 F.2d 770 (8 Cir. 1940), SDC 12.1806, 12.1807 and Chapter 37.40 relating to this state's and its local agencies' powers in eminent domain.

■ Another approach to Indian Reservation lands not being subject to section line easements, but on the contrary to the enumerated restrictions, inherent in the powers of the Secretary of the Interior, the Attorney General and the several states, to appropriate but only in the course of eminent domain, is the case law evolved rule, that a Treaty between the United States and an Indian Nation or Nations, relating to uses of certain public lands, removes such area from the territory previously regarded as a part of the public domain.

Such was the effect of the Fort Laramie Treaty of 1851 between the United States and several Indian Nations, as certain public lands including those comprising the Pine Ridge Reservation were designated as Indian territory. Bardon v. Northern Pacific Railroad Co., 145 U.S. 535, 12 S.Ct. 856, 36 L.Ed. 806.

Significant on this point are the following statements in that opinion at pages 542–543, 12 S.Ct. at page 858:

"The lands granted were designated by odd-numbered sections within certain definite limits, and only the public lands, said the court, owned absolutely by the United States were subject to survey and division into sections, and to them only was the grant applicable. It embraced, therefore, only such as could at the time be sold and enjoyed, and not those which the Indians, pursuant to treaty stipulations, were left free to enjoy."

" * * * And of the Indians' right of occupancy it said, that this right, with the correlative obligation of the government to enforce it, negatived the idea that congress, even in the absence of any positive stipulation to protect the Osages, intended to grant their land to a railroad company, either absolutely or cum onere. 'For all practical purposes', the court added, 'they owned it; as the actual right of possession, the only thing they deemed of value, was secured to them by treaty, until they should elect to surrender it to the United States.",

and from Leavenworth, Lawrence and Galveston Railroad Co. v. United States, 92 U.S. 733, 23 L.Ed. 634, the following at pages 741 and 745:

"* * * Every alternate section designated by odd numbers, within certain defined limits, is granted; but only the public lands owned absolutely by the United States are subject to survey and division into sections, and to them alone this grant is applicable. It embraces such as could be sold and enjoyed, and not those which the Indians, pursuant to treaty stipulations, were left free to occupy."

"* * * We go further, and say, that whenever a tract of land shall have been once legally appropriated to any purpose, from that moment the land thus appropriated becomes severed from the mass of public lands; and that no subsequent law, proclamation, or sale would be construed to embrace or operate upon it, although no reservation were made of it. It may be urged that it was not necessary in deciding that case to pass upon the question; but, however this may be, the principle asserted is sound and reasonable, and we accept it as a rule of construction."

Even more persuasive, if not compelling on the reservation being outside and not within the public domain and not subject to the Public Highway Act of 1866, 43 U.S.C.A. Sec. 932,[1] are the following extracts from the Treaty of 1868, 15 Stat. 635, relating to covered territory that it "* * * shall be, and the same is, set apart for the absolute and undisturbed use and occupation of the Indians herein named, * * *", that "the United States now solemnly agrees that no persons except those herein designated and authorized so to do, and except such officers, agents, and employés of the government as may be authorized to enter upon Indian reservations in discharge of duties enjoined by law, shall ever be permitted to pass over, settle upon, or reside in the territory described in this article, * * *;" and that "* * * they will, not in future object to the construction of railroads, wagon roads, mail stations, or other works of utility or necessity, which may be ordered or permitted by the laws of the United States. But should such roads or other works be constructed on the lands of their reservation, the government will pay the tribe whatever amount of damage may be assessed * * *". See also United States v. O'Donnell, 303 U.S. 501, 58 S.Ct. 708, 82 L.Ed. 980; United States v. Shoshone Tribe of Indians, 304 U.S. 111, 116, 58 S.Ct. 794, 82 L.Ed. 1213, and Central Pacific R.R. Co. v. Almeda County, 284 U.S. 463, 470, 52 S.Ct. 225, 76 L.Ed. 402.

Finally, a negative ruling on constructions and improvements of public highways established by the Act of 1889, c. 405, sec. 21, 25 Stat. 888, not being subject to the controls imposed by the Act of 1901, 25 U.S.C.A. § 311.

The language bringing easements for such highways into existence under the 1889 Act is in the form of provisos:

"* * * That there shall be reserved public highways four rods wide around every section of land allotted, or open to settlement by this act, the section lines being the center of said highways * * *", and "* * * that nothing in this act contained shall be so construed as to affect the right of Congress or of the government of Dakota to establish public highways * * *."

This is a congressional grant for public highways "around every section allotted," under other terms of the Act, within Indian reservations—in this case stipulated on as involving Pine Ridge and not allotted land conveyed in fee—dimension wise for width the same as that of section lines, and those the centers, hence, descriptively and as it is used in that section, one of the public highways referred to in the Act of 1901, 25 U.S.C.A. § 311 and therefore as constructions or improvements are sought

1. "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."

to be made, subject to "compliance with such requirements" as the Secretary of the Interior or any duly authorized state or local agency may impose. See cases supra cited on this section and also United States v. Oklahoma Gas & Electric Co., 318 U.S. 206, 63 S.Ct. 534, 87 L.Ed. 716.

■ This decision will be regarded as the court's findings of fact and conclusions of law. The Government's request for a permanent injunction is hereby granted, with leave to the defendant within thirty days from the entry of judgment to amend and to proceed as hereinbefore indicated and with directions to the Government to prepare and submit a judgment for approval and entry.