**UNITED STATES of America, Appellant,**

v.

**Glen M. CLARKE et al., Appellees.**

**Nos. 77–2571, 77–3469.**

United States Court of Appeals, Ninth Circuit.

Jan. 15, 1979.

Rehearing Denied in No. 77–2571 Feb. 26, 1979.

Carl Strass (argued), of Dept. of Justice, Washington, D. C., for appellant.

Richard A. Weinig (argued), of Anchorage, Alaska, for appellees.

Before WRIGHT, KENNEDY and TANG, Circuit Judges.

KENNEDY, Circuit Judge:

The United States filed this trespass suit as the owner in fee title of property held in trust after its patent to an Indian by allotment. *See* 25 U.S.C. §§ 331–332. A complete background of the case is set forth in our earlier opinion, *United States v. Clarke*, 529 F.2d 984 (9th Cir. 1976). The dispute concerns a road that was built on property of the Indian owner by a private party. The private owner's interest in the road later was transferred to a political subdivision of the State of Alaska.

In this phase of the proceedings, the United States sought an injunction against use of the road, claiming that the State of Alaska or a political subdivision may not acquire an interest in Indian lands held in trust except by eminent domain and that an injunction should be granted until eminent domain proceedings are commenced. The trial court denied the injunction, reasoning that the land had been the subject of an inverse taking and that the public has the right to use the road after its acquisition by this means, the property owner being limited to an action for compensation resulting from inverse condemnation. The court granted partial summary judgment and denied injunctive relief, and the latter ruling is the subject of this appeal.[1]

1. The appellees seek review of the district court's denial of an earlier motion for partial summary judgment. Assuming the order was an appealable one, a timely notice of appeal was not filed. Therefore, the propriety of this order will not be addressed.

A state is allowed by federal statute to take Indian land by condemnation, 25 U.S.C. § 357. The sole issue on appeal is whether or not the statute extends to takings by inverse condemnation as well as by the affirmative exercise of the eminent domain power. We agree with the district court that the statute permits a state to take the Indian land by paying compensation in an inverse condemnation action.

The statute in question provides: "Lands allotted in severalty to Indians may 'be condemned' for any public purpose under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned, and the money awarded as damages shall be paid to the allottee." The argument of the Government that the statute does not include inverse takings is based principally on *Minnesota v. United States*, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939). There the Supreme Court held that the United States is an indispensable party in state actions to condemn any trust property·and that such actions must be brought exclusively in the federal courts. We think that case is simply inapposite to the issue before us. There was no occasion there for the Court to consider the propriety of inverse condemnation suits, since the eminent domain action was instituted by the state. The reason for requiring the condemnation suit to be heard in a federal court is irrelevant to whether the United States may, on behalf of the Indian owner, maintain an inverse condemnation action. The Court noted that Indian land under trust allotment is a subject within the exclusive control of the federal government, and that "the judicial determination of controversies concerning such lands has been commonly committed exclusively to federal courts." *Id.* at 389, 59 S.Ct. at 296 (footnote omitted). Whether the proceeding is for inverse condemnation or for eminent domain, the federal court may maintain control over the action to comply with the policies of *Minnesota*.

We think once the taking has been accomplished by the state it serves little purpose to interpret the statute to refuse to permit an inverse condemnation suit to be maintained on the grounds that the state should have filed an eminent domain action prior to the taking. As the Alaska Supreme Court noted in an analogous situation:

> The property has already been taken. It would serve no useful purpose to insist now that the state must initiate a condemnation action and take the initial steps required by law and rule as a condition to the exercise of its power of eminent domain. What is at issue here is the matter of awarding appellees just compensation. Such compensation may be determined in this proceeding, utilizing so far as practicable the statutory requirements and procedural steps relating to the condemnation action, as well as it could be determined in a separate condemnation action to be instituted by the state. Since the evident purpose of the injunction was to require the state, if it chose to utilize appellees' property, to institute a separate condemnation action to acquire such property, and since we have held that such action is unnecessary, the injunction was not appropriate and should be dissolved.

*Department of Highways v. Crosby*, 410 P.2d 724, 729 (Alaska 1966).

The Government argues that the statute permitting condemnation should be limited to direct condemnation to avoid clouding title to trust lands, thus increasing protection for Indian allottees. It suggests that such clouding will occur any time the state or a political subdivision trespasses upon the property as, such as in this case, by building a road across it. We do not think this is a persuasive reason for accepting such limited interpretation of the statute. To us it seems a contradiction to deny Indian beneficial owners a cause of action for damages under the guise of protecting their rights. Allowing inverse condemnation suits will encourage states and political subdivisions to act with more circumspection, not less, when governmental activities conflict with ownership rights of Indian trust lands. And our holding certainly does not prevent the United States and the allottee from

seeking immediate relief from unlawful intrusions upon land, whether the intrusion is done by trespass of a private or public entity.

The United States further contends that our holding will require it to make frequent and expensive inspections of these lands for possible acts of inverse condemnation. We think, however, that if an intrusion is of such severity that it constitutes an inverse taking the matter will come to the attention of the Indian allottee and the Government.

Congress has declared that the taking of trust lands for public use is to be governed by the laws of the state in which the property is found. We see no reason to ignore this mandate simply because the taking is reviewed in an inverse condemnation action rather than by a direct condemnation suit.

■ There appear to be unresolved questions in this case, including, among others, the date and extent of the taking and the operation of the applicable statute of limitations. These matters remain before the lower court. We hold only that section 357 of 25 U.S.C. does not preclude actions against states or their political subdivisions, according to the law of the state, for inverse condemnation. Accordingly, it does not appear that the plaintiff will prevail in its prayer for injunctive relief and the district court was correct to deny the injunction pending the suit.

The order denying the injunction is affirmed and the case is remanded for further proceedings.