Except as modified above, the Note and Mortgage shall remain in full force and effect.

Bankruptcy Record, Exh. H to Offshore's counterclaim.

The bankruptcy judge found that the first requirement of the statute had not been satisfied because the letter did not state that there had been a usurious overcharge. In addition, the bankruptcy court found that the second statutory requirement had not been met because there had been no refund of any portion of the sum of $250,000 Offshore paid to Beausejour on December 28, 1981. Finally, the bankruptcy judge found that the third requirement had not been satisfied because no formal adjustments had ever been made to the appropriate contracts to insure that Offshore would not be required to pay any further interest above the statutory maximum.

It is clear that Beausejour's letter did not notify Offshore of the usurious overcharge. There is no mention of it in the letter. Thus, Beausejour did not comply with the first requirement of the curative law. We need not review the bankruptcy court's findings that the second and third elements were not satisfied because the statute requires compliance with all three elements.

In summary, the "cure notice" did not satisfy the statutory requirements. We affirm the judgment of the lower courts on this issue. We do not need to consider whether a complete cure notice would have allowed Beausejour to avoid the civil penalty imposed by § 687.071(7).

### III.

For the reasons stated above, the order of the district court is

AFFIRMED.

BRADLEY, ARANT, ROSE & WHITE, a partnership, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 85–7796.

United States Court of Appeals, Eleventh Circuit.

Oct. 20, 1986.

Thad G. Long, Bradley, Arant, Rose & White, Linda Friedman, Birmingham, Ala., for plaintiff-appellant.

Frank W. Donaldson, U.S. Atty., Leon F. Kelly, Jr., Asst. U.S. Atty., Birmingham, Ala., C. William Lengacher, U.S. Dept. of Justice, Civil Div., Washington, D.C., for defendant-appellee.

Before HILL and HATCHETT, Circuit Judges, THOMAS *, District Judge.

PER CURIAM:

In this case, we affirm the district court's ruling that it lacked jurisdiction over this law firm's lawsuit against the United States, pursuant to 28 U.S.C. 2410.

In 1970, Brad's Machine Products, Inc. (Brad's) retained Bradley, Arant, Rose & White (law firm), to represent it in defending charges alleging federal tax deficiencies and also to pursue claims for federal income tax refunds for the fiscal years 1967–69. In December, 1970, the Internal Revenue Service (IRS) made a jeopardy tax assessment against Brad's, which froze its assets and resulted in the closing of the business. Brad's and the law firm then executed a fee contract and security agreement which gave the law firm a lien for its fees upon any proceeds resulting from the tax refund action.

At this time, Brad's was also involved in litigation with the government pursuant to the Renegotiation Act, 50 U.S.C.App. §§ 1211–1223, relating to its fiscal years 1968–69. On June 14, 1971, the Renegotiation Board issued orders determining that Brad's had realized excessive profits during both fiscal years from contracts and subcontracts subject to the Renegotiation Act. On June 23, 1972, the Court of Claims entered judgment against Brad's in an amount in excess of $1,650,000. Eight years later, on November 24, 1980, the Tax Court entered a judgment in the tax suit, ruling that Brad's had overpaid taxes during the fiscal years 1967–69.

On October 21, 1981, the Treasury Department prepared three checks totaling approximately $880,000 in satisfaction of the tax refund judgments; each check was made payable to "Brad's, c/o IRS, Birmingham, Alabama." The three checks were sent to the IRS office in Birmingham, and that office forwarded them to the Birmingham Office of the United States Attorney for the Northern District of Alabama.

On October 22, 1981, the United States Attorney requested the Clerk of the District Court for the Northern District of Alabama to issue a Writ of Execution for levy on the checks. The clerk issued the writ and gave it to the United States Marshal (Marshal) for the Northern District of Alabama. The Marshal obtained the three checks from the United States Attorney, endorsed them, "Brad's Machine Products, make payable to U.S. Marshal, Northern District of Alabama," and stamped immediately below the endorsement "Pay to the Order of Birmingham Branch Federal Reserve Bank of Atlanta, Thomas C. Green, United States Marshal symbol 8101." The Marshal deposited the endorsed checks into the Marshal's Service Deposit Fund Account in the Treasury.[1]

---

\* Honorable Daniel H. Thomas, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. Neither the parties nor the district court further described this account or indicated the source of funds usually deposited into this ac-

count. Consequently, we assume that such information would not be helpful in resolving this dispute.

Following the entry of judgment in the Tax Court, the law firm began negotiations with the United States Attorney contending that it was entitled to a portion of the proceeds from the Tax Court judgment. The law firm based its claim on the fee lien arising from the fee contract and security agreement and upon the existence of a statutory lien arising from Alabama state law.[2] The law firm contended that its lien had priority over any government lien based on the Court of Claims judgments because the government's lien could not have arisen earlier than the docketing of the Renegotiation Act judgments. The law firm also indicated to the United States Attorney its willingness to accept a reduced amount of $350,000 in settlement of its claim to a portion of the Tax Court judgment proceeds. The United States Attorney recommended acceptance of this offer, but the Justice Department rejected it.

Shortly thereafter, at the direction of the Justice Department, the Marshal issued a check drawn upon the Marshal's Service Deposit Fund Account, payable to the Department of the Army, in the amount of the tax refunds. The Department of Army deposited this check to the credit of a special account receivable in the United States Treasury which had been set up to receive collections on the Court of Claims judgments obtained against Brad's in 1972. The Justice Department then notified the law firm that its settlement had been rejected and that the proceeds of the tax refunds had been forwarded to the Army and set off against the outstanding 1972 Court of Claims judgments against Brad's.

The law firm brought this lawsuit in state court alleging that it had a lien on the proceeds of the tax judgments superior to any government lien. The law firm based jurisdiction upon 28 U.S.C. § 2410,[3] alleging that "[t]his action is to quiet title to a certain federal tax refund, to foreclose the plaintiff's lien thereon, and is further in the nature of an interpleader. The defendant claims a lien with respect to said tax refund." The government removed the action to federal district court. The district court dismissed the law firm's lawsuit for lack of jurisdiction.

## DISCUSSION

■ We agree with the district court's decision that the refund checks were never delivered to Brad's, but were rather, together with the funds upon which they were drawn, continuously in the custody and under the control of the United States; consequently, no res was ever created over which the state court had subject matter jurisdiction. Because the government properly claimed a title interest and not a lien interest, 28 U.S.C. § 2410 does not confer jurisdiction. The state court, thus, was without jurisdiction. A district court has no jurisdiction of a lawsuit removed to it from a state court which itself lacks jurisdiction of the subject matter or the parties. *Minnesota v. United States*, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939).

■ Because Brad's was never in actual possession of the checks, it acquired no title thereto or interest therein upon which execution could be effectively levied or to

2. Alabama Code § 34–3–61(b) (1985) provides:
   Upon actions and judgments for money, [Attorneys-at-law] shall have a lien superior to all liens but tax liens, and no person shall be at liberty to satisfy said action or judgment, until the lien or claim of the attorney for his fees is fully satisfied; and attorneys-at-law shall have the same right and power over action or judgment to enforce their liens as their clients had or may have for the amount due thereon to them.

3. 28 U.S.C. § 2410(a) provides:
   (a) Under the conditions prescribed in this action and section 1444 of this title for the

protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—
   (1) to quiet title to,
   (2) to foreclose a mortgage or other lien upon,
   (3) to partition,
   (4) to condemn, or
   (5) of interpleader or in the nature of interpleader with respect to,
real or personal property on which the United States has or claims a mortgage or other lien.

which a lien could attach.[4] No valid negotiation, transfer, or delivery of an interest occurred. *See* Ala.Code §§ 7–1–201(14), 7–1–201(20), and 7–3–202(1) (1975).[5] Brad's contends that the government's acts following issuance of the checks amounted to an admission that it considered the checks to be Brad's property, as evidenced by the levy executed upon the checks. We agree with the district court: The levy was a nullity. Because title to the checks and to the funds upon which they were drawn remained continuously in the custody of the United States, no res was created upon which the levy could properly be executed.

The net effect of the government's handling of the checks was to transfer the funds from an IRS account in the Treasury to the Marshal's Service Deposit Fund Account in the Treasury and on to the special Army account in the Treasury. These transfers perhaps could have been made by a simple book-entry in the Treasury accounts. We do not speculate as to the reasons for the government's circular handling of the three Treasury checks.

The law firm further contends that delivery of the checks to the United States Marshal amounted to a remitter to a neutral third party who held the checks as a stakeholder until adjudication of the competing liens, thus creating a res upon which liens could attach. *See,* Ala.Code §§ 7–3–102(1)(a); 7–1–201(20) (1984). We also reject this contention.

4. At the time the checks were endorsed and cashed, Brad's no longer existed as a corporate entity, its charter having been officially suspended.

5. These statutes, in pertinent parts, provide:
Alabama Code § 7–1–201:
    Subject to additional definitions contained in the subsequent articles of this title which are applicable to specific articles or parts thereof, and unless the context otherwise requires, in this title:
    ....
    (14) "Delivery" with respect to instruments, documents of title, chattel paper or securities means voluntary transfer of possession.
    ....
    (20) "Holder" means a person who is in possession of a document of title or an instru-

Because we find that the district court lacked jurisdiction, we do not address arguments on the merits of the claim regarding set-off (31 U.S.C. § 3728) and other interesting issues.[6]

AFFIRMED.

ment or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank.
Alabama Code § 7–3–202:
    (1) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery.

6. The "Set-off Act," now codified at 31 U.S.C. § 3728, provides in pertinent part:
    (a) The Comptroller General shall withhold paying that part of a judgment against the United States Government presented to the Comptroller General that is equal to a debt the plaintiff owes the Government.