## UNITED STATES v. KILGORE.
### No. 1974.

Circuit Court of Appeals, Tenth Circuit.
April 13, 1940.

Rehearing Denied June 5, 1940.

Robert H. Fabian, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl., and Charles R. Denny, Norman MacDonald, and William B. Holst, Attys., Dept. of Justice, all of Washington, D. C., on the brief), for appellant.

A. M. Beets, of Oklahoma City, Okl. (Wm. J. Zeman and Walter O. Beets, both of Oklahoma City, Okl., on the brief), for appellee.

Before BRATTON and HUXMAN, Circuit Judges, and MURRAH, District Judge.

HUXMAN, Circuit Judge.

This action involves the construction of the Act of June 21, 1906, 34 Stat. 325. The question is whether the Act removed restrictions on inherited land of an adult, nonresident Kickapoo Indian to whom no land had been allotted in Oklahoma or Indian Territory.

Tho-kah-qua-muck was a Kickapoo Indian.

"The East Half (E½) of the Southwest Quarter (SW¼) of Section Twenty-four (24), Township Ten (10) North of Range Three (3) East of the Indian Meridian in Pottawatomie County, Oklahoma," had been allotted to her by the United States by trust patent dated October 6, 1894. She died intestate in 1904, a resident of the Republic of Mexico. The allotted land was inherited by her daughter, Pa-ka-ta-mo-quah, who is now and at all times has been a resident of Mexico. Pa-ka-ta-mo-quah had not had allotted to her in her own right an allotment of land in Oklahoma or in the Indian Territory.

On February 20, 1925, Pa-ka-ta-mo-quah executed an oil and gas lease of the inherited land to William L. Bowie. After some negotiations the lease was approved by the Secretary of the Interior, on January 14, 1926. The lease was assigned to the Phillips Petroleum Company and the assignment was also approved by the Secretary of the Interior. On February 16, 1926, during the period of restriction stated in the original trust patent, as extended by a series of executive orders, Pa-ka-ta-mo-quah conveyed the land by warranty deed to L. P. Wheeler, who in turn conveyed it by warranty deed to E. P. Kilgore. Neither of these transfers was approved by the Secretary of the Interior.

The United States filed this suit against Kilgore seeking to quiet its title to this land and to cancel and vacate the purported deeds made by Pa-ka-ta-mo-quah to Wheeler and from Wheeler to E. P. Kilgore. Kilgore has at all times been excluded from the property by the government. The property has never been on the tax rolls of Pottawatomie County, Oklahoma. Kilgore died during the proceedings and the action was revived in the name of Elizabeth B. Kilgore, administratrix of his estate. Judgment was entered in favor of the defendant and against the government. From this ruling an appeal has been taken to this court. The parties will be referred to as they appeared in the court below.

■ Under the provisions of Section 5 of the Act of February 8, 1887, 24 Stat. 388, 25 U.S.C.A. § 348, the lands remained restricted in the hands of the original allottee during her lifetime; and since the restrictions are not personal to the allottee, but run with the land, the lands remained subject to restrictions in the hands of the heir, unless they were removed by the Act of June 21, 1906, 34 Stat. 325. See United States v. Reily, 290 U.S. 33, 34, 37, 38, 54 S. Ct. 41, 78 L.Ed. 154.

The pertinent portions of this statute provide: "All restrictions as to sale and incumbrance of all lands, inherited and otherwise, of all adult Kickapoo Indians, and of all Shawnee, Delaware, Caddo, and Wichita Indians who have heretofore been or are now known as Indians of said tribes, affiliating with said Kickapoo Indians now or hereafter nonresident in the United States, who have been allotted land in Oklahoma or Indian Territory are hereby removed: Provided, That any such Indian allottee who is a nonresident of the United States may lease his allotment without restriction for a period not exceeding five years: Provided further, That the parent or the person next of kin having the care and custody of a minor allottee may lease the allotment of said minor as herein provided, except that no such lease shall extend beyond the minority of said allottee."

The question for consideration here is whether a Kickapoo Indian falling within the provisions of this Act who himself has not received an allotment, may convey land acquired by inheritance or otherwise, free from restrictions. For the consideration of this question, the pertinent portions of the Act may be read as follows: All restrictions as to the sale and encumbrance of all lands, inherited and otherwise, of all adult Kickapoo Indians, now or hereafter nonresidents of the United States, who have been allotted land in Oklahoma or Indian Territory, are hereby removed. As thus read, the elements that must be present to remove restrictions are:

1. The land must be acquired by an adult Kickapoo Indian by inheritance or otherwise;

2. He must now or hereafter be a nonresident of the United States;

3. There must have been allotted to him land in Oklahoma or Indian Territory.

This statute has been considered in three cases, in none of which however, was present the precise question presented here. Johnson v. United States, 8 Cir., 283 F. 954; United States v. Estill, 10 Cir., 62 F. 2d 620; United States v. Reily, 290 U.S. 33, 54 S.Ct. 41, 78 L.Ed. 154.

In the Johnson case, supra, the court in its decision said that the Act removed restrictions under specified conditions. The court then held that the conditions of the Act had been met in that case. The court said (283 F. at page 956): "And the counts each allege that the deceased ancestor was an absentee Shawnee allottee, a member of the absentee Shawnee tribe of Indians, that the grantor was his heir and conveyed his inherited interest in his ancestor's allotment; and the stipulation shows that each grantor was an absentee Shawnee Indian *and had been allotted lands in his own right. We think it also fairly inferable from the record that the grantors had been allotted lands in Oklahoma or Indian Territory,* and that they and their ancestors were affiliated with nonresident Kickapoos." (Italics supplied).

The court evidently attached significance to the requirement that the grantors who inherited the land had themselves been allotted land in Oklahoma or Indian Territory. The statute was next considered in the Estill case, supra, and the decision in the Johnson case was approved. In this case, the court again emphasized that the Indian grantor whose conveyance was questioned was an allottee. Both of these cases were considered by the Supreme Court in United States v. Reily, supra. The court expressly approved the holdings in the Johnson case. The court also referred to the Estill case and used this language [290 U.S. 33, 54 S.Ct. 44, 78 L.Ed. 154]: "The heirs were Kickapoos who had

received allotments in the same reservation in their own right."

In none of these cases did the decision turn on whether the grantor was an allottee in his own right, but it is significant that in every case he was such an allottee, and that that fact was referred to by the court when discussing the requirements of the statute.

It is urged that the Act in question is uncertain in its meaning. It is not a model for clarity, but when viewed against the background prompting its passage, its purpose becomes quite apparent. The Kickapoo Indian Tribe originally lived in Kansas. They were of a rather migratory nature. Dissension broke out among them, as a result of which they split up into groups. Some remained in Kansas, where they received allotments, others moved to Oklahoma and received allotments there. Some of them moved from Oklahoma to the Republic of Mexico where they resided on a reservation set aside for them by the Mexican government. At different times members of the tribe that had gone to Mexico would return to Oklahoma, and some who had settled in Oklahoma would go to Mexico. They continued to travel back and forth between Oklahoma and Mexico. This was the situation at the time the Act in question was passed. United States v. Reily, supra.

With this understanding of the Kickapoo Tribe, the intent of Congress in the passing of this legislation becomes quite apparent. It was the purpose of the Act to remove restrictions against alienation where adult members of the tribe resided out of the United States, and, themselves being allottees, acquired other land, but to withhold such removal where those acquiring land were not themselves allottees and did not own restricted land allotted to them. It was evidently the intent of Congress to provide against the return of such Indians to Oklahoma from the Republic of Mexico without some means of support. In other words, it was the intent of Congress to retain lands acquired by those members of the tribe who did not have an allotment in their own right and thus make certain that in the event they returned to the United States, they would not be destitute.

Thus viewed, the ·statute becomes clear, and in order that restrictions be removed, three things must exist: 1, The Indian must be an adult member of the tribe; 2, he must reside outside the United

States; and, 3, he must have received an allotment in Oklahoma or Indian Territory. Here only two of the required elements are present. The third is lacking.

The judgment is reversed and the cause is remanded, with instructions to enter judgment for plaintiff.