**John J. SPRIGGS, Sr., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 6711.**

United States Court of Appeals
Tenth Circuit.

Nov. 18, 1961.

John J. Spriggs, Sr., Lander, Wyo., pro se.

Robert S. Griswold, Jr., Dept. of Justice, Washington, D. C. (Ramsey Clark, Asst. Atty. Gen., Robert N. Chaffin, U. S. Atty., and Alfred G. Kaufman, Jr., Asst. U. S. Atty., Cheyenne, Wyo., and Roger P. Marquis, Dept. of Justice, Washington, D. C., with him on the brief), for appellee.

Before BRATTON, PICKETT and HILL, Circuit Judges.

PICKETT, Circuit Judge.

John J. Spriggs, an attorney, of Lander, Wyoming, brought this action to establish an undivided interest in certain parcels of land located in the Wind River Indian Reservation, Wyoming.[1] Spriggs' claim grew out of a deed from Mary Bradford O'Neal, an enrolled Shoshone Indian, to an interest in six Indian allotments. The deed was executed pursuant to a contingent fee contract for legal services rendered to Mrs. O'Neal in connection with a will contest matter arising

1. Private Law 85–672, Aug. 26, 1958, 72 Stat. A145, which authorizes this action, reads:

"That, notwithstanding any statute of limitations or lapse of time, jurisdiction is hereby conferred upon the United States District Court for the District of Wyoming to hear, determine, and adjudicate any claim of John J. Spriggs of Lander, Wyoming, against the United States relating to certain lands in the Wind River Indian Reservation, Wyoming, conveyed to him by quitclaim deed by Mary Bradford O'Neal Candler on November 18, 1925. Suit upon any such claim may be instituted at any time within one year after the date of the enactment of this Act: *Provided*, That nothing in this Act shall be construed as an inference of liability on the part of the United States."

in 1925. In substance, the complaint alleges that agents of the United States knowingly and falsely represented to Spriggs that Mary Bradford O'Neal was incompetent to convey the lands in question, and, as a result of such representations, Spriggs reconveyed the lands to the United States for the benefit of Mrs. O'Neal. Under Rule 39(c), Fed.R.Civ. P., 28 U.S.C.A., the case was submitted to a jury which returned a general verdict in favor of the United States. The court made separate findings of fact and conclusions of law, and judgment was entered dismissing the action.

There is no substantial conflict in the material evidence, which is mostly documentary.[2] Under the provisions of the Indian General Allotment Act, 24 Stat. 388, as amended, 25 U.S.C.A. §§ 331–334, 348, 349, 381, 339, 341, 342, lands on the Wind River Indian Reservation, Wyoming were allotted to six Shoshone Indians, and trust patents were issued to the allottees. The patents contained the usual restrictions against alienation of the title, and provided that the United States would hold the title in trust for the benefit of the allottees for a period of 25 years. The trust period was extended by executive order for an additional period of 25 years as provided by Section 5 of the Indian General Allotment Act, 24 Stat. 389, as amended, and the restrictions have never been removed.

Upon the death of the six allottees, William O'Neal, an enrolled Shoshone Indian, inherited an undivided interest in the property. He died July 29, 1924, leaving a last will and testament designating his wife, Mary Bradford O'Neal, as his principal devisee. This will was filed for probate in the District Court of Fremont County, Wyoming, and a timely contest to the probate thereof was instituted. Mrs. O'Neal employed Spriggs to represent her in the will contest matter, and agreed to give him one-half of all

property which she would receive if the will was sustained. The will was sustained in the state court, and, without obtaining the approval of the Secretary of the Interior, Mrs. O'Neal executed a deed conveying to Spriggs one-half of her interest in the six allotments.[3] A certified copy of the will was filed with, and approved by, the Secretary of the Interior after O'Neal's death. Following correspondence with the Bureau of Indian Affairs it was indicated to Spriggs that Mrs. O'Neal had the right to convey the property. Within a short time, however, Spriggs was advised that the five allotments in question were held in trust at the time of O'Neal's death; that the restrictions against alienation had not been removed by the Secretary of the Interior; and that any conveyances made by Mrs. O'Neal of the trust property were void. The evidence is without dispute that the five allotments in controversy here were still held in trust at the date of O'Neal's death, and that a fee patent had not thereafter been issued. A demand was made upon Spriggs to reconvey the property to the United States in trust for Mrs. O'Neal, and this demand was complied with. Years afterward Spriggs convinced himself that Mrs. O'Neal, at the time of the conveyances, owned the land in fee, and that the representatives of the United States had misrepresented the facts to him.

Prior to inheriting his undivided interests in the lands in question O'Neal received an allotment of land to which a fee patent was issued to him on April 19, 1916. It is conceded that prior to her marriage to O'Neal, Mrs. O'Neal had been granted a fee patent to her own allotment. The granting of these patents did not remove the restrictions on the lands claimed by Spriggs since it has long been settled that restrictions such as those in the trust patents issued to

2. For additional facts see Spriggs v. Seaton, 10 Cir., 271 F.2d 583; Spriggs v. McKay, 97 U.S.App.D.C. 60, 228 F.2d 31.

3. The Government concedes that at the time of O'Neal's death a fee patent to one of them, allotment Number 950, had issued, and also that the state court had jurisdiction as to this allotment.

Indians pursuant to the provisions of Section 5 of the Indian General Allotment Act, 24 Stat. 389, as amended, 25 U.S.C.A. § 348, are not personal to the allottee, but run with the land, and are binding upon the heirs. United States v. Reily, 290 U.S. 33, 54 S.Ct. 41, 78 L. Ed. 154; United States v. Noble, 237 U.S. 74, 35 S.Ct. 532, 59 L.Ed. 844; Bowling v. United States, 233 U.S. 528, 34 S.Ct. 659, 58 L.Ed. 1080; United States v. Gilbertson, 7 Cir., 111 F.2d 978; United States v. Kilgore, 10 Cir., 111 F. 2d 665; Johnson v. United States, 8 Cir., 283 F. 954. See Mullen v. United States, 224 U.S. 448, 32 S.Ct. 494, 56 L.Ed. 834. It is equally clear that when an Indian to whom a trust patent has been issued dies before the expiration of the trust period without having made a will, the Secretary of the Interior has the exclusive authority to make a determination of the heirs. 25 U.S.C.A. § 372. Henrietta First Moon v. Starling White Tail, 270 U.S. 243, 46 S.Ct. 246, 70 L.Ed. 565; Bertrand v. Doyle, 10 Cir., 36 F.2d 351. The will of an enrolled Indian is effective as a disposition of his restricted lands only when approved by the Secretary of the Interior either before or after his death, and in such an instance state law has no application. Approval of the will does not free allotments from restrictions nor terminate the trust. 25 U.S.C.A. § 373. Blanset v. Cardin, 256 U.S. 319, 41 S.Ct. 519, 65 L.Ed. 950; Hanson v. Hoffman, 10 Cir., 113 F.2d 780.[4] See United States v. Mathewson, 8 Cir., 32 F.2d 745. The granting of citizenship to an allottee or his heirs does not affect the trust property. Cramer v. United States, 261 U.S. 219, 43 S.Ct. 342, 67 L.Ed. 622; Winton v. Amos, 255 U.S. 373, 41 S.Ct. 342, 65 L.Ed. 684; Tiger v. Western Investment Co., 221 U.S. 286, 31 S.Ct. 578,

55 L.Ed. 738. See United States v. Nice, 241 U.S. 591, 36 S.Ct. 696, 60 L.Ed. 1192.

 It follows that when Mrs. O'Neal attempted to convey the lands to Spriggs without the approval of the Secretary of the Interior, with the exception of allotment Number 950, the restrictions were effective, and the deed or deeds conveyed no interest therein to Spriggs. Bailey v. Banister, 10 Cir., 200 F.2d 683. Therefore, the reconveyance of the lands by Spriggs to the United States was not the result of fraud.

Affirmed.

4. In Hanson v. Hoffman, 10 Cir., 113 F.2d 780, 789, it was said:

"It will be observed that under 25 U.S. C.A. § 373, supra, the death of Benjamin and the approval of the will did not free the allotments from restrictions, nor terminate the trust respecting the properties held by the Secretary. The three allotments remained restricted and the moneys derived therefrom, both before and subsequently to the death of Benjamin, and the lands conveyed to the Secretary remained subject to the trust, and to administration and control by the Secretary."