D. Q. (Bill) COUCH, Appellant,

v.

Stewart L. UDALL, Secretary of the Interior, Department of Interior, United States of America, Appellee.

No. 9834.

United States Court of Appeals
Tenth Circuit.

Dec. 4, 1968.

---

See also 265 F.Supp. 848.

John R. Couch, Oklahoma City, Okl., for appellant.

Robert S. Lynch, Dept. of Justice, Washington, D. C., (Clyde O. Martz, Asst. Atty. Gen., B. Andrew Potter, U. S. Atty., Robert L. Berry, Asst. U. S. Atty., and Edmund B. Clark, Dept. of Justice, Washington, D. C., with him on brief) for appellee.

Before LEWIS, BREITENSTEIN and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

This is an appeal from a summary judgment wherein the trial court denied appellant D. Q. Couch's request to reverse an administrative decision of the appellee, Secretary of the Interior, in an Indian probate proceeding.

The facts are not in dispute. An Indian allottee under the General Allotment Act[1] held a patent on the land in question. She died testate while residing in Oklahoma. Her will was approved by an Examiner of Inheritance and distribution was ordered to her beneficiaries who were Mexican nationals. Based upon the nationality of the Indian heirs, the examiner further found that the land passed stripped of its trust or restrictive character. The beneficiaries filed a request for rehearing by the examiner regarding his determination. The request was denied, whereupon, an appeal was perfected to the Secretary of the Interior. Before and while the appeal was pending, Couch acquired seven warranty deeds covering part of the devised lands. These deeds were obtained without the approval of the Secretary. The Secretary reversed the examiner's opinion and held the land was not stripped of its trust or restrictive character.

The controlling issue presented by this appeal is whether the Secretary's refusal to remove the restrictions on allotted Indian land was arbitrary, capricious, and contrary to law because the land was held by Indians who are Mexican nationals. Couch challenges the Secretary's decision and alleges that it is contrary to a long-standing interpretation of the

1. 25 U.S.C. § 331 et seq.

General Allotment Act, 25 U.S.C. § 348, in that the act does not establish that Indians who are Mexican nationals are within a class Congress seeks to protect.

Two additional issues raised by this appeal are the disposition of monies accumulated from leasing the land in question during the period of appeal, and Couch's right to discovery of previous administrative decisions of the Secretary by interrogatories.

■ The language of the General Allotment Act of February 8, 1887, now 25 U.S.C. § 348, delineates the restrictions, scope and effect of the trust imposed upon Indian lands by the federal government. The Supreme Court has held that the restraints upon alienation imposed by the act run with the land and are not personal to the Indian.[2] The act of June 21, 1906,[3] removed the restrictions, but they were re-imposed by the act of February 17, 1933.[4] In 1933 the Supreme Court said: "Apparently the act [of June 21, 1906] has been the source of much trouble, and recently it has been repealed, but with saving clauses protecting rights lawfully acquired under it."[5] The case at bar does not fall within the saving clause and therefore the restriction is re-established for the lands held by the Mexican nationals under the General Allotment Act.[6] Couch contends that in former opinions the Secretary has determined that lands belonging to Indian nationals of other countries are not subject to the continued guardianship of the Secretary, and therefore, the decision of the Secretary to reverse the examiner's opinion violates a well-established policy.

■ First it is necessary to determine if the Secretary is bound by previous decisions in similar cases, or phrased another way, what is the effect of stare decisis on administrative determinations?

"Agencies' practices resemble those of the courts not only in following precedents but also in deviating from stare decisis. The reasons for deviation are about the same: *changes in conditions, objectives, attitudes, understanding, personnel, programs, pressures, political climate, as well as, even in absence of changes in such factors, sheer inability to avoid inconsistencies in dealing with complex subject matter.*"[7]

Davis cites court decisions which verify the legal right and necessity for changes or variations in administrative agency decisions.[8] If the Secretary's change in policy was arbitrary or capricious, then his authority to make sudden changes could be questioned. Where the variation in department policy is, as in this case, for good cause we cannot say the change is arbitrary or capricious.

The next question posed is, are the alleged changes in administrative policy in the instant case a permissible interpretation of the law and Congressional intent?

■ Initially it must be recognized that the "American Indians" are not a homogenous group. The variation in treatment accorded some tribes and the

2. Bowling v. United States, 233 U.S. 528, 535, 34 S.Ct. 659, 58 L.Ed. 1080 (1914).

3. Act of June 21, 1906, Ch. 3504, 34 Stat. 325, 362–363.

4. The Act of February 17, 1933, 47 Stat. 819, provides: "That the paragraph relating to the sale and encumbrance of lands of the Kickapoo and affiliated Indians under the heading 'Kickapoo' (34 Stat.L. 363) in the Act entitled 'An Act making appropriations for the current and contingent expenses of the Indian Department, for fulfilling treaty stipulations with various Indian tribes, and for other purposes, for the fiscal year ending June 30, 1907,' approved June 21, 1906, as amended, is hereby repealed."

5. United States v. Reily, 290 U.S. 33, 41, 54 S.Ct. 41, 78 L.Ed. 154 (1933).

6. 25 U.S.C. § 331 et seq.

7. 2 K. Davis, Administrative Law Treatise, § 17.07 at 528 (1958).

8. F.C.C. v. W.O.K.O., 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204 (1946); Shawmut Ass'n v. S. E. C., 146 F.2d 791, 796–797 (1st Cir. 1945).

emancipation of various other groups, is evidence of the government's recognition of these inherent differences. It further appears that the Kickapoo Indians, who are the heirs of the land herein involved, are a group which is particularly ill-adapted to function with responsibility or maturity in our modern society. Congressional recognition of the inherent inability of the Kickapoos to function independently is evidenced by the limited scope of the reimposition of the restraints on alienation which were lifted by the 1906 legislation.

The Kickapoo tribe has members in the United States and Mexico. The government stated during oral argument that the members of both groups are prone to migrate back and forth between the United States and Mexico, and when the Mexican Kickapoo comes to the United States, he almost automatically becomes a charge of the United States Government if he is destitute. Certainly in that instance the Mexican Kickapoo represents a member of the class Congress sought to protect.

In view of the facts of this case, the Secretary's interpretation of existing applicable law is not arbitrary or capricious. The devisees may in fact, by their physical migration, come within the borders of the United States. This fact coupled with their own request that they be afforded the benefits of the trust vis-á-vis their interest in land in this country demonstrates that those Indians are in fact within the class Congress seeks to protect.

A reviewing federal court will not ordinarily overturn discretionary matters within the Secretary's area of administration.[9] The Secretary's act was neither arbitrary nor capricious; the Congressional trust imposed upon the land in question is for the benefit of the Indians herein involved and the restriction is a covenant which runs with the land. We hold that the Secretary's decision is correct.

Having made the determination denying the main thrust of the appeal, it is not necessary to decide the discovery question nor the question raised regarding rents collected during the years 1961 and 1966.

Affirmed.

---

9. Udall v. Taunah, 398 F.2d 795 (10th Cir. 1968).