609 F.2d 1365
 OKLAHOMA GAS AND ELECTRIC COMPANY, an Oklahoma corporation,
Plaintiff-Appellee,
v.
UNITED STATES of America, Trustee and Owner of the legal
title to said land for the use and benefit of a
certain restricted Indian, and
Willis E. Robedeaux and Juanita A. Robedeaux, his wife; and
United States of America, acting through the Farmers Home
Administration, United States Department of Agriculture; and
The Equitable Life Assurance Society of the United States,
Defendants-Appellees,
and
Citizens State Bank, Morrison, Oklahoma, Defendant,
and
Red Rock Co-op, Defendant-Appellant.
 No. 77-1939.
 United States Court of Appeals,
Tenth Circuit.
 Argued July 16, 1979.
Decided Nov. 26, 1979.
Rehearing Denied Jan. 9, 1980.
 
 Clee Fitzgerald of Fitzgerald, Houston & Worthington, Stillwater, Okl., for defendant-appellant.
 Maryann Walsh, U. S. Dept. of Justice, Washington, D.C. (with James W. Moorman, Asst. Atty. Gen., Washington, D.C., Hubert H. Bryant, U. S. Atty., and Hubert A. Marlow, Asst. U. S. Atty., Tulsa, Okl., and Carl Strass, U. S. Dept. of Justice, Washington, D.C., on the brief), for defendant-appellee United States.
 Roy E. Grantham of Grantham, Casey & Kirkpatrick, Ponca City, Okl., for defendants-appellees Willis E. Robedeaux and Juanita A. Robedeaux.
 Before SETH, Chief Judge, and BARRETT and McKAY, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 This is a condemnation action instituted by Oklahoma Gas and Electric Company. The subject land was part of a parcel allotted in 1907 to William Robedeaux, an Otoe Indian, pursuant to the General Allotment Act, now codified in Title 25 of the United States Code. Under § 348, the land is held in trust by the United States for the benefit of the allottee for a period which has been extended by the President to the time of this suit.[1] Allotted lands are not "liable to the satisfaction of any debt contracted prior to the issuing of the final patent in fee therefor." 25 U.S.C. § 354.
 
 
 2
 By a deed entitled "Deed to Restricted Indian Land Special Form," William conveyed the subject land in 1950 to his son, Willis E. Robedeaux. The deed, which contained all of the original restrictions, was approved under the authority of the Secretary of the Interior.
 
 
 3
 After this action was underway, Oklahoma Gas and Electric and Willis Robedeaux executed a memorandum of intent whereby Robedeaux would receive another parcel of real property, rather than a cash payment, in exchange for the land to be condemned. The Secretary of the Interior has indicated he would approve this exchange.
 
 
 4
 Red Rock Co-Op, joined as a defendant below, is a judgment creditor of Robedeaux. It asserts a lien against the anticipated proceeds of the condemnation. It objects to the proposed exchange as an attempt to interfere with its rights as a creditor.
 
 
 5
 In a well supported order, the district court held that the judgment creditor does not have an interest in Robedeaux's property or in the proceeds of its sale sufficient to permit interference with the exchange. The district court, applying federal law,[2] found that the United States retains its interest as trustee in the proceeds from condemned trust land. If the proceeds are reinvested in other land as provided by 25 U.S.C. § 409a,[3] the replacement land becomes subject to the trust. The court characterized the exchange as a reinvestment of what would have been the proceeds from the condemnation of Robedeaux's restricted property. Therefore, the restrictions against encumbrance continue through to the exchanged property and Robedeaux's creditors can claim no interest therein.
 
 
 6
 We agree and affirm the district court's decision. We add only that this result must obtain even though Willis Robedeaux was not the original allottee of the restricted property. The restrictions imposed on Indian land by the General Allotment Act run with the land and are not personal to the individual Indian allottee.[4] United States v. Noble, 237 U.S. 74, 80, 35 S.Ct. 532, 59 L.Ed. 844 (1915); Bowling v. United States, 233 U.S. 528, 535, 34 S.Ct. 659, 58 L.Ed. 1080 (1914); Couch v. Udall, 404 F.2d 97, 99 (10th Cir. 1968); Spriggs v. United States, 297 F.2d 460, 463 (10th Cir. 1961), Cert. denied, 369 U.S. 876, 82 S.Ct. 1148, 8 L.Ed.2d 279 (1962). The restrictions continue to bind the land until the time prescribed by Congress is allowed to lapse. Couch v. Udall, 404 F.2d at 99; United States v. Homeratha, 40 F.2d 305, 306 (W.D.Okl.1930), Appeal dismissed,49 F.2d 1086 (10th Cir. 1931). It is the ownership of the United States which is important for legal purposes, not the status of the particular Indian benefited. See Minnesota v. United States, 305 U.S. 382, 386, 59 S.Ct. 292, 83 L.Ed. 235 (1939); Stevens v. Commissioner, 452 F.2d 741, 747 (9th Cir. 1971).
 
 
 7
 The creditor argues that because Willis Robedeaux is a grantee rather than an heir, we can draw no support from cases which hold that restrictions continue to apply to Indian land held by the heirs of allottees. For practical purposes, Robedeaux is an heir. He merely received the land from his allottee father before, rather than after, his father's death. Robedeaux is not a mere grantee; he is a restricted grantee who obtained his interest in the allotted property with the approval of the Secretary of the Interior. The policies which favor treating Indian land as restricted when held by an heir also apply here.
 
 
 8
 In Stevens v. Commissioner, 452 F.2d 741 (9th Cir. 1971), one of the restrictions common to Indian lands the exemption from tax was found to continue to apply although the allotted land in question was purchased by another restricted Indian. The court noted that the federal government had encouraged purchases and exchanges of allotted land by restricted Indians in an effort to amass economically viable blocks of property. To forward these objectives, Indians must be able to transfer allotted land without losing the protective restrictions. Because of the policies involved, the court in Stevens was unwilling to disregard restrictions on Indian land unless a clear expression of contrary congressional intent could be found. Id. at 748-49.
 
 
 9
 We also find no contrary congressional intent here. While the statute conferring the restrictions on Indian land (25 U.S.C. § 348) would provide a better guide if it had specifically mentioned restricted Indian grantees as well as allottees and heirs, we resolve doubtful legislative expressions in favor of Indians. Squire v. Capoeman, 351 U.S. 1, 6-7, 76 S.Ct. 611, 100 L.Ed. 883 (1956).
 
 
 10
 Because Willis Robedeaux's land was restricted notwithstanding his status as a grantee, the rules applied by the district court, which apply to restricted Indian lands generally, govern here.
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 See 25 C.F.R. Ch. 1 App. (1979)
 
 
 [2]
 Red Rock Co-Op would have us apply Oklahoma debtor-creditor law in this condemnation proceeding. Although 25 U.S.C. § 357 provides for the condemnation of Indian lands by the state, the statute has been interpreted to "merely (authorize) condemnation for 'any public purpose under the laws of the state or territory where located.' " Minnesota v. United States, 305 U.S. 382, 389, 59 S.Ct. 292, 296, 83 L.Ed. 235 (1939). The state does not by this statute acquire the right to use state procedure or apply state law in condemnation suits
 
 
 [3]
 Whenever any nontaxable land of a restricted Indian of the Five Civilized Tribes or of any other Indian tribe is sold to any State, county, or municipality for public-improvement purposes, or is acquired, under existing law, by any State, county, or municipality by condemnation or other proceedings for such public purposes, or is sold under existing law to any other person or corporation for other purposes, the money received for said land may, in the discretion and with the approval of the Secretary of the Interior, be reinvested in other lands selected by said Indian, and such land so selected and purchased shall be restricted as to alienation, lease, or incumbrance, and nontaxable in the same quantity and upon the same terms and conditions as the nontaxable lands from which the reinvested funds were derived, and such restrictions shall appear in the conveyance
 25 U.S.C. § 409a.
 
 
 [4]
 In Stewart v. Keyes, 295 U.S. 403, 411-12, 55 S.Ct. 807, 79 L.Ed. 1507 (1935), the land held by an Indian as an heir was treated differently from land held as an allottee only because the restriction on the specific allotment in question terminated, by its own terms, upon the death of the original allottee