[No. 36990. En Banc. April 2, 1964.]

PUBLIC UTILITY DISTRICT NO. 1 OF PEND OREILLE COUNTY, *Respondent*, v. INLAND POWER & LIGHT COMPANY, *Relator*, THE SUPERIOR COURT FOR PEND OREILLE COUNTY, *Felix Rea, Judge, Respondent.**

*Davis, Trezona, Chastek & Lorenz*, by *Will Lorenz*, for relator.

*Clarence C. Dill* and *William G. Ennis*, for respondent.

*Ramsey Clark* and *Roger P. Marquis*, amici curiae.

WEAVER, J.—This is a review by certiorari of a decree of public use and necessity.

The decree provides that: (1) the contemplated acquisition by Public Utility District No. 1 of Pend Oreille County, Washington (herein called the District) of all the electrical works, lines, plants, facilities, and electrical properties now owned and operated in Pend Oreille County by the Inland Power & Light Company (herein called Inland) that are

*Reported in 390 P. (2d) 690.

useful for generation, transmission, and distribution of electricity is a public necessity; and (2) the contemplated use of the property sought to be taken is a public use. The record contains evidence sufficient to support the trial court's conclusion that acquisition by the District of Inland's electrical properties within the boundaries of Pend Oreille County would be for a public use, required by public interest, and necessary for a public purpose under the statutes and decisions of this state.

The prime purpose of this review, however, is to challenge the jurisdiction of a state court to entertain an action of eminent domain against properties in which the United States has an interest.

Since its inception, Inland (and its predecessor), a nonprofit membership corporation organized under the laws of this state, has been financed in its operations in ten Washington counties and two counties in Idaho by the Rural Electrification Administration, an agency of the United States Department of Agriculture. 7 U.S.C. (1958 Ed.) § 901, *et seq.* Inland's purpose is to implement the rural electrification program, *i.e.*, to bring the benefits of electrification and telephone service to sparsely populated and remote areas that were not served by existing public utility companies. This was made possible through long-term, low interest rate loans from the United States, secured by mortgages upon Inland's properties. The loan contracts and various mortgages are between Inland and the federal government. They contain numerous restraints and controls not found in a usual security transaction. For example, Inland cannot employ a manager or superintendent without first securing consent. By statute, Inland cannot sell or dispose of its properties without approval of the administrator of the Rural Electrification Administration. 7 U.S.C. (1958 Ed.) § 907.

A survey of the loan contracts, mortgages and the Rural Electrification Act leads to only one conclusion: the United States has a substantial interest in the properties in Pend Oreille County which the District seeks to condemn.

The District recognized this interest when it made the Rural Electrification Administration (hereinafter called REA), Department of Agriculture, United States of America, a respondent in its first condemnation petition.

The REA, by the United States Attorney for the Eastern District of Washington, moved to be dismissed from the action

". . . for the reason that said respondent, as a sovereign, has not consented to be sued in the above entitled court, and therefore this court has no jurisdiction over said respondent."

The motion of dismissal was granted. Subsequently, the entire action was dismissed because

". . . under the pleadings of petitioner now on file the United States is a necessary party, Respondent, and that without the United States as a party under these pleadings, this court does not have jurisdiction over the subject matter of this action in eminent domain . . . ."

The District's amended petition of eminent domain drops the United States as a party, but identifies the REA as Inland's mortgagee; it is substantially the same as the original petition.

■ The power of eminent domain is an attribute of sovereignty. It is an inherent power of the state, not derived from, but limited by the fundamental principles of the constitution. *Miller v. Tacoma*, 61 Wn. (2d) 374, 382, 378 P. (2d) 464 (1963); *King Cy. v. Theilman*, 59 Wn. (2d) 586, 592, 369 P. (2d) 503 (1962). Of course, by statute, the state may delegate the power of eminent domain to one of its subdivisions, but such statutes are strictly construed. *State ex rel. Tacoma School Dist. No. 10 v. Stojack*, 53 Wn. (2d) 55, 330 P. (2d) 567, 71 A.L.R. (2d) 1064 (1958).

Relator argues in its brief:

"RCW 8.12.060, the statute from which the PUD acquires its right of condemnation, requires that the defendants include '. . . names of the owners and occupants thereof and of *persons having any interest therein* . . .'" (Italics ours.)

Under this statute the United States is a necessary and indispensable party to the eminent domain proceeding. This distinguishes the instant case from *United States v. Cless*, 254 F. (2d) 590 (C.A. 3d 1958), for the United States was not entitled, under local law, to be a party in an action to foreclose a prior mortgage.

Eliminating the REA as a party to the amended petition may be sufficient to protect the petition from pretrial attack, but trial on the merits clearly established the interest of the United States in the property.

Counsel have cited us no case directly in point. In *Carr v. United States*, 98 U. S. 433, 438, 25 L. Ed. 209 (1878), the court said:

"In some cases (perhaps it was so in the present case), it might not be apparent until after suit brought that the possession attempted to be assailed was that of the government; but when this is made apparent by the pleadings, or the proofs, the jurisdiction of the court ought to cease. Otherwise, the government could always be compelled to come into court and litigate with private parties in defence of its property."

■■■ It is elemental that an action against property in which the United States has an interest is a suit against the United States. In *United States v. Brosnan*, 363 U. S. 237, 250, 4 L. Ed. (2d) 1192, 80 S. Ct. 1108 (1960), the court said:

". . . Under the decisions of this Court, a judicial proceeding against property in which the Government has an interest is a suit against the United States which cannot be maintained without its consent. *The Siren*, 7 Wall. 152; *Minnesota v. United States*, 305 U. S. 382; *United States v. Alabama*, 313 U. S. 274. It has been suggested that this principle applies only where the Government holds a fee interest or such other interest in the property as to render it an indispensable party under state law. See *United States v. Cless*, 254 F. 2d 590, 592. That, however, seems a dubious distinction, since whether or not the United States is an indispensable party to a judicial proceeding cannot depend on state law. See *Minnesota v. United States, supra*, at p. 386. . . ."

It is urged that the United States (being fully aware of what is happening, it having appeared as amicus curiae in this court) may make an appearance in the condemnation proceeding at any stage it wishes.

The rule of law is to the contrary.

" . . . Where jurisdiction has not been conferred by Congress, no officer of the United States has power to give to any court jurisdiction of a suit against the United States. Compare *Case v. Terrell*, 11 Wall. 199, 202; *Carr v. United States*, 98 U. S. 433, 435-39; *Finn v. United States*, 123 U. S. 227, 232-33; *Stanley v. Schwalby*, 162 U. S. 255, 270; *United States v. Garbutt Oil Co.*, 302 U. S. 528, 533-35. . . . " *Minnesota v. United States*, 305 U. S. 382, 388, 83 L. Ed. 235, 59 S. Ct. 292.

This is not a new or novel doctrine. In *United States v. Clarke*, 33 U. S. 276, 281 (8 Peters, 436), 8 L. Ed. 1001 (1834), Chief Justice Marshall said:

"As the United States are not suable of common right, the party who insta such suit must bring his case within the authority of some act of congress, or the court cannot exercise jurisdiction over it. . . . "

Authorities supporting the rule that the United States, as sovereign, is immune from suit save as it consents to be sued are collected in *United States v. Sherwood*, 312 U. S. 584, 586, 85 L. Ed. 1058, 61 S. Ct. 767 (1941).

Counsel have not cited, nor have we been able to find, a federal statute authorizing REA, or anyone on its behalf, to consent to suit against property in which it has an interest.

We recognize, as did the trial court originally, the dilemma in which respondent finds itself. Each horn points to the same result. Without the United States as a party, the requirements of RCW 8.12.060 (quoted *supra*) have not been met; with the United States as a party, absent an act of Congress authorizing an action of eminent domain against REA, or authorizing some federal officer to intervene on its behalf, the action cannot be maintained.

The decree of public use and necessity is reversed and the cause remanded with directions to dismiss with

prejudice respondent's amended petition of eminent domain against relator's property in Pend Oreille County.

It is so ordered.

OTT, C. J., DONWORTH, FINLEY, ROSELLINI, and HUNTER, JJ., concur.

HILL, J. (dissenting)—I dissent. The majority opinion is probably correct insofar as the practicalities of condemnation are concerned. Indeed, it is an understatement to say, as the majority does, that a survey of the loan contracts, mortgages and the Rural Electrification Act leads to the conclusion that "the United States has a substantial interest in the properties in Pend Oreille County which the District seeks to condemn."

But substantial as that interest undoubtedly is, it is nonetheless the interest of a mortgagee and that interest can be terminated by the payment of all, or an agreed pro tanto portion of the amount due the mortgagee.[1]

There is a provision in the mortgage to the United States which clearly contemplates the condemnation of portions of the mortgaged property.[2]

The trial court recognized that we are here concerned with only the first of the three phases of a condemnation action: (1) adjudication of public use and necessity; (2) determination of damages to be awarded to the owner; and (3) payment of the amount of the award and entry into possession. *State ex rel. Lange v. Superior Court* (1963), 61 Wn. (2d) 153, 377 P. (2d) 425, and cases there cited.

---

[1] The exact amount of the advance made by the United States to Inland at this time, under its loan contract and the amendments thereto, can only be "guesstimated." The borrowing limit, as of November 6, 1961, was in excess of ten million dollars.

[2] "In the event that the Mortgaged Property, or any part thereof, shall be taken under the power of eminent domain, all proceeds and avails therefrom, except to the extent that all noteholders shall consent to other use and application thereof by the Mortgagor, shall forthwith be applied by the Mortgagor; first, to the ratable payment of any indebtedness by this Mortgage secured other than principal of or interest on the notes; second, to the ratable payment of interest which shall have accrued on the notes and be unpaid; third, to the ratable payment of or on account of the unpaid principal of the notes; and, fourth, the balance shall be paid to whosoever shall be entitled thereto."

No contention is made here that the three interrelated essential findings in this phase of the proceeding have not been made: (1) that the proposed use is really a public use; (2) that the public interest requires it; and (3) that the property appropriated is necessary for the proposed public purpose. See *State ex rel. Lange v. Superior Court, supra.*

As stated in *Mercer Island School Dist. No. 400 v. Victor Scalzo, Inc.* (1959), 54 Wn. (2d) 539, 540, 342 P. (2d) 225,

"At the hearing on the first phase, the court is concerned only with evidence regarding the necessity for the taking, and whether the use for which the property is sought is a public use. . . ."

The trial court recognized the apparent futility of the gesture the Public Utility District was making, in taking the first step in this eminent domain proceeding, but concluded that it was not its function to say that the District was attempting the impossible and that, consequently, it was entitled to its order of public use and necessity.

We ought to reach the same conclusion. Where the interest of the United States is one that can be terminated by the repayment of the money it has loaned or an agreed pro tanto portion thereof, that interest should not, in the first phase of the proceeding, be a bar to the condemnation. If and when it is established that the lien interest of the United States is so substantial that it cannot be removed by the condemner, will be the time to dismiss the proceeding.

I cannot agree that because the United States has a mortgage lien on property it is ipso facto immune from a condemnation, even though the lien can be removed by payment; nor can I agree that, on the record before us, it is established that in this particular case such payment cannot be made.

I would affirm the trial court.

HALE, J., concurs with HILL, J.

HAMILTON, J., concurs in the result of the dissent.

July 29, 1964. Petition for rehearing denied.