618 F.2d 601
 PUBLIC UTILITY DISTRICT NO. 1 OF FRANKLIN COUNTY, a
municipal corporation, Plaintiff-Appellant,
v.
BIG BEND ELECTRIC COOPERATIVE, INC., a corporation, and
United States of America, Defendants-Appellees.
 No. 77-3904.
 United States Court of Appeals,
Ninth Circuit.
 May 12, 1980.
 
 John G. Schultz, Leavy, Taber, Schultz, Bergdahl & Sweeney, Pasco, Wash., for plaintiff-appellant.
 John M. Klobucher, Robert M. Sweeney, Asst. U. S. Atty., Spokane, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before GOODWIN and FERGUSON, Circuit Judges, and WILLIAMS,* District Judge.
 PER CURIAM.
 
 
 1
 Public Utility District No. 1 of Franklin County (PUD) attempted under a state condemnation statute to acquire property from Big Bend Electric Cooperative, Inc. The district court granted Big Bend a summary judgment. We affirm.
 
 
 2
 PUD is a municipal corporation, Big Bend is a private nonprofit membership corporation. Both corporations are organized under the laws of the State of Washington; both furnish electrical energy to residents of Franklin County, Washington. Big Bend is financed by the Rural Electrification Administration (REA) pursuant to the Rural Electrification Act, 7 U.S.C. § 901, et seq. Big Bend has mortgaged all of its assets to REA in exchange for loans, the principal debt is in excess of $10,000,000.
 
 
 3
 PUD sought to acquire a major portion of the facilities owned, operated, and maintained by Big Bend. PUD contends that it is entitled to acquire these facilities (1) pursuant to agreements allegedly negotiated in 1947, 1955, and 1965; and (2) pursuant to Wash.Rev.Code 54.16.020[1] which provides that public utility districts may condemn properties to provide energy to their customers. PUD attempted the condemnation because it claims that the current utility boundaries of the two companies encourage duplication of resources and inefficient distribution of electricity to Franklin County residents. PUD contends that these effects are inconsistent with Wash.Rev.Code 54.48.020, the legislative pronouncement of state policies encouraging consolidation of public utilities for efficient allocation of power.[2]
 
 
 4
 PUD contends that the summary judgment against it was error because material facts remain in dispute. PUD is correct in contending that certain facts are in dispute. For example, PUD asserts, and Big Bend vigorously denies, the existence of contractual rights in favor of PUD. However, these contested facts are not material. Even if all of the facts are as PUD contends, they would still not give rise to a claim upon which the relief PUD seeks can be granted. Before Big Bend can sell or dispose of its property, rights, or franchises, it must obtain the approval of REA. 7 U.S.C. § 907.[3] Contracts regarding such transfers are conditioned on REA approval. Accord, Farmers and Merchants Bank v. Federal Reserve Bank, 262 U.S. 649, 660, 43 S.Ct. 651, 655, 67 L.Ed. 1157 (1923).[4] REA approval in this case has been expressly withheld.[5] Therefore, the agreements, even if they exist, are not enforceable.
 
 
 5
 In the alternative, PUD seeks to condemn the facilities in question, pursuant to Wash.Rev.Code 54.16.020. This claim is controlled by our decision in an earlier case involving a similar condemnation attempt by another Washington state public utility district. In Public Utility District No. 1 of Pend Oreille County v. United States, 417 F.2d 200 (9th Cir. 1969), we held that under the Supremacy Clause of the Constitution a state municipal public utility could not condemn property owned by a federally subsidized public utility where the condemnation would interfere with the federal purpose of the Rural Electrification Act. The purpose of the Act is to provide low cost electricity to rural America. Public Utility District No. 1 of Pend Oreille County, supra, 417 F.2d at 202. In the instant case, REA has determined that the PUD's proposed condemnation would decrease the ability of the REA to serve this purpose. PUD disputes this determination, and contends that the proposed condemnation would actually facilitate rural electrification by making the distribution of electricity more efficient. PUD contends that because the issue of the wisdom of the taking is disputed, the district court erred in granting a summary judgment for the United States and Big Bend. The argument does not follow.
 
 
 6
 REA is the administrative agency charged by Congress with responsibility for facilitating rural electrification. REA was intended by Congress to determine the appropriate course of conduct to accomplish the legislative purpose. Courts properly give wide latitude to agency determinations in their area of expertise. See National Broadcasting Company v. Federal Communications Commission, 516 F.2d 1101, 1122 (D.C.Cir.1974), cert. denied, sub nom. Accuracy in Media, Inc. v. National Broadcasting Company, 424 U.S. 910, 96 S.Ct. 1105, 47 L.Ed.2d 313 (1976). This court will not reverse this sort of agency determination unless it is arbitrary, capricious, or an abuse of discretion. See 5 U.S.C. § 706.
 
 
 7
 REA's determination that the proposed condemnation will interfere with rural electrification in Franklin County must be upheld unless it is shown to be arbitrary or capricious. PUD has not made such a showing. We therefore affirm the district court's summary judgment.
 
 
 
 *
 The Honorable Spencer M. Williams, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Wash.Rev.Code 54.16.020 reads in relevant part as follows:
 "Acquisition of property and rights Eminent domain.
 "A district may construct, condemn and purchase, purchase, acquire, lease, add to, maintain, operate, develop, and regulate all lands, property, property rights . . . franchises, plants, plant facilities, and systems for generating electric energy by water power, steam, or other methods; . . . poles and pole lines, and cables and conduits and any and all other facilities; and may exercise the right of eminent domain to effectuate the foregoing purposes or for the acquisition and damaging of such property and rights, or property of any kind appurtenant thereto, and for the purpose of acquiring the right to make physical connection with plants and plant facilities of all persons and municipalities. . . ."
 
 
 [2]
 Wash.Rev.Code 54.48.020 reads as follows:
 "Legislative declaration of policy
 "The Legislature hereby declares that the duplication of the electric lines and service of public utilities and cooperatives is uneconomical, may create unnecessary hazards to the public safety, discourages investment in permanent underground facilities, and is unattractive, and thus is contrary to the public interest and further declares that it is in the public interest for public utilities and cooperatives to enter into agreements for the purpose of avoiding or eliminating such duplication."
 
 
 [3]
 7 U.S.C. § 907 provides, in pertinent part:
 "No borrower of funds under sections 904 or 922 of this title shall, without the approval of the Administrator, sell or dispose of its property, rights, or franchises, acquired under the provisions of this chapter, until any loan obtained from the Rural Electrification Administration, including all interest and charges, shall have been repaid."
 
 
 [4]
 "Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressedly referred to or incorporated in its terms. This principle embraces alike those laws which affect its construction and those which affect its enforcement and discharge." Farmers and Merchants Bank v. Federal Reserve Bank, 262 U.S. 649, 660, 43 S.Ct. 651, 655, 67 L.Ed. 1157 (1923)
 
 
 [5]
 Donald E. Runyon, acting Administrator of the REA, filed an affidavit with the district court which stated in part:
 ". . . I have not exercised and will not exercise the power vested in me by the second paragraph of Section 7 of said Act to approve the acquisition by the Plaintiff of the properties, rights or franchises which it seeks to acquire by its Second Amended Complaint on file herein because in my judgment the acquisition will have adverse effects on Big Bend, the security of the loans described above and on the achievement of the Rural Electrification Act objectives."