**CITY OF MORGAN CITY**

v.

**SOUTH LOUISIANA ELECTRIC, et al.**

Civ. A. No. 91–0523.

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Feb. 25, 1993.

Dale Hugh Hayes, Leonard & Hayes, Morgan City, LA, John D. Whitler, Wallace E. Brand, Brand, Beeny, Berger & Whitler, Washington, DC, for City of Morgan City.

James L. Alcock, Jr., John Schwab, William E. Hodgkins, Schwab & Walter, Baton Rouge, LA, for Cajun Elec. Power Co-op. Inc.

James M. Funderburk, Duval, Funderburk, Sundbery & Lovell, Houma, LA, for South Louisiana Elec. Co-op. Ass'n.

J. Christopher Kohn, U.S. Dept. of Justice, Civ. Div., Washington, DC, Carl E. Perry, Asst. U.S. Atty., Lafayette, LA, Douglas J. Hughes, James G. Bruen, Jr., U.S. Dept. of Justice, Washington, DC, for U.S., thru Rural Electrification Administration (REA).

David W. Leefe, Liskow & Lewis, New Orleans, LA, Clifton S. Elgarten, Amy J. Mauser, Crowell & Moring, Washington, DC, for American Public Power Ass'n, amicus,

Nat. Institute of Mun. Law Officers, amicus, and National League of Cities, amicus.

## MEMORANDUM RULING

DOHERTY, District Judge.

This matter comes before the Court on a number of motions filed on behalf of both plaintiff and defendants in this matter. In order to facilitate ruling on the issues, the Court asked all parties to further brief the narrow issue of the Rural Electrification Administration ("REA") "approval authority" as to a condemnation by the State of electrical facilities which are indebted to the REA.

### *Procedural History*

On August 3, 1990 the City of Morgan City filed in the 16th Judicial District Court, Parish of St. Mary, a petition for expropriation seeking to condemn property and electric service rights owned by defendant, South Louisiana Electric Cooperative Association ("SLECA"), a federally financed, non-profit cooperative. On January 11, 1991, a petition of intervention was filed on behalf of Cajun Electric Power Cooperative, Inc. ("Cajun"); the United States was also joined as a third party defendant on the basis that the United States holds a security interest in the property which is the subject of this proceeding. The United States timely removed the state court proceeding to this Court on March 11, 1991. Cajun then filed with this Court on June 5, 1991 an amended petition of intervention, alleging noncompliance with 7 U.S.C. § 907 with this Court on June 5, 1991.

On August 29, 1991 Morgan City filed a Motion to Dismiss Cajun's amended petition of intervention and said motion was denied by the Honorable Richard T. Haik, Sr. on October 17, 1991. On December 9, 1991 this case was transferred to the Honorable Rebecca F. Doherty.

Presently before this Court are Motions to Dismiss and in the alternative for Summary Judgment filed on behalf of the United States of America, SLECA and Cajun, seeking to dismiss plaintiff's claims arguing that state law based expropriation cannot proceed under the Supremacy Clause of the United States Constitution, and the Rural Electrifi-

cation Association, as part of the United States Department of Agriculture, has withheld its statutory and preemptive authority to approve the property transfer under 7 U.S.C. § 907. Also pending before the Court is a Motion for Partial Summary Judgment filed on behalf of the City of Morgan City based on preemption claiming the REA administrator has not met the procedural requirements under the Administrative Procedure Act, 5 U.S.C. § 553, and the Federal Register Act, 44 U.S.C. § 1505 and 1510, which are pre-conditions to administrative preemption by regulation, or in the alternative that the REA administrator has not been delegated by Congress the authority to preempt state law solely for the purpose of relieving the economic pressures on rural electrical cooperatives.

Morgan City has also filed an appeal from Magistrate Judge Methvin's ruling of October 22, 1992 wherein the Magistrate Judge denied the City's Motion to Compel production of documents and answers to interrogatories propounded to the United States of America. Additionally, the United States has filed a Motion to Strike documents filed by the City of Morgan City in support of their appeal of the Magistrate's ruling.

This Court GRANTS the Motion to Dismiss filed on behalf of the United States of America, SLECA and Cajun and DENIES the Motion for Partial Summary Judgment filed on behalf of the City of Morgan City. Further, this Court upholds the Magistrate's ruling and therefore DENIES the appeal by the City of Morgan City which renders MOOT the motion by the United States of America to strike documents filed in connection with the City of Morgan City's appeal of the Magistrate's ruling for the following reasons to wit:

This case concerns the pending expropriation by the City of Morgan City of approximately 252 SLECA customers, as well as the lines, poles, transformers and other equipment serving these customers. This expropriation is a result of Phase II of Morgan City's annexation plans, which went into effect in 1986. The annexation itself has occurred and therefore will not be affected by the outcome of this case. A Phase III an-

nexation which would involve an additional approximately 267 SLECA customers and the same lines, poles, transformers and related equipment will occur in the future according to the sworn deposition testimony of the Honorable Cedric S. LaFleur, Mayor of the City of Morgan City and its consulting engineer, Harold J. Beard. Morgan City has offered to pay SLECA a total of $895,955.78 over a period of 8 years at $111,994.47 a year, for the expropriation of SLECA's facilities in Phase II. (SLECA Exhibit 1)

On June 16, 1992 a 28 page report with numerous attachments and studies, produced by the staff of the REA, was adopted by the administrator pursuant to 7 U.S.C. § 907, withholding his approval of the proposed expropriation by the City of Morgan City.

The REA Act provides at 7 U.S.C. § 907:

"No borrower of funds under § 4 of § 201 (7 U.S.C. § 904 or § 922) shall, without the approval of the Administrator, sell or dispose of its property, rights, or franchises, acquired under the provisions of this Act, until any loan obtained from the Rural Electrification Administration, including all interest and charges, shall have been repaid."

The central issue in this matter has been the ongoing dispute between the parties as to the authority of the REA Administrator under § 907 to withhold approval of the expropriation and thereby essentially preempt Morgan City's state granted power of expropriation. This Court, in a minute entry dated December 4, 1992, asked all parties to brief the narrow issue of whether or not the REA has the authority pursuant to 7 U.S.C. § 907 to prevent the expropriation of SLECA's property by the City of Morgan City.

The Court now must make a determination of whether 7 U.S.C. § 907 preempts, by conflict and pursuant to the Supremacy Clause, the state expropriation power granted by the State of Louisiana to the City of Morgan City.

The inquiry begins with analysis of 7 U.S.C. § 907. Does the prohibition that no borrower shall without the administration's approval "sell or dispose of its property ..."

extend to *involuntary* disposal, i.e., expropriation.

This Court notes that the issue of REA's authority to approve or disapprove an expropriation pursuant to § 907 has been previously addressed in the Ninth Circuit cases of *Public Utility District No. 1 of Pend Oreille County v. United States*, 417 F.2d 200, 201–202 (9th Cir.1969) and *Public Utility District No. 1 of Franklin County v. Big Bend Electric*, 618 F.2d 601, 603 (9th Cir.1980). In both cases, the Ninth Circuit held that under § 907 a borrower's property may not be disposed of by any means, including involuntary condemnation or expropriation, without REA's approval. The Fifth Circuit has expressly approved the holding and rationale of *Big Bend, supra*, in the case of *City of Madison, Miss. v. Bear Creek Water Association, Inc.*, 816 F.2d 1057, 1060 (5th Cir. 1987).

It is apparent to this Court that the Fifth Circuit Court of Appeals has enforced the Supremacy Clause principles barring municipal condemnations that interfere with federal programs. In *Bear Creek*, 816 F.2d 1057, a municipality attempted to condemn property of a water association financed in part by the Farmers' Home Administration ("FmHA") under a federal program. The district court granted FmHA's motion for summary judgment because the water association was indebted to FmHA, and federal statute, 7 U.S.C. § 1926(b), prevented municipal condemnations of property owned by federally indebted water associations.

In affirming the district court the Fifth Circuit cited the opinion of *Big Bend* and emphasized that the Supremacy Clause prevents municipalities from condemning property Congress has protected from being removed from its role in a federal program stating:

The case at bar exemplifies the evil Congress wished to avoid. [The association's] affidavits showed that [the municipality] desires to condemn ... the most densely populated (and thus most profitable) territory now served by [the association]. Even if fair value is paid for the loss of the facilities, such an action would inevitably have an adverse effect on the remaining

customers ... in the form of lost economies of scale resulting in higher per user costs. To allow expanding municipalities to 'skim the cream' by annexing and condemning those parts of the water association with the highest population density (and thus the lower per use cost) would undermine Congress' purpose of facilitating inexpensive water supplies for farmers and other rural residents and protecting those associations' ability to repay their FmHA debts. See *Big Bend,* 618 F.2d 601 (9th Cir.1980) (Similarly rejecting utilities attempt to condemn property owned by cooperative finance by REA).

*Id.* at 1060.

Morgan City and the amici curiae, American Public Power Association, the National Institute of Municipal Law Officers and the National League of Cities argue that the cases from the Ninth Circuit are no longer good law as they were decided prior to the Supreme Court's decision in *Arkansas Electric Co-op Corp. v. Arkansas Public Service Commission,* 461 U.S. 375, 103 S.Ct. 1905, 76 L.Ed.2d 1 (1983) and that case *sub silentio* reversed or overruled the previous cases decided by the Ninth Circuit concerning § 907. After a review of *Arkansas Electric* this Court finds that § 907 was not at issue, rather, *Arkansas Electric* addressed a state regulatory body's jurisdiction over cooperatives. Further *Arkansas Electric* only addresses express and field preemption, neither of which is relevant to this case involving preemption by conflict. *Arkansas Electric, supra,* at 388, 103 S.Ct. at 1914. Indeed, the Fifth Circuit specifically embraced the Supremacy Clause preemptive exclusion of *Big Bend* in 1987, some four (4) years *after Arkansas Electric* was decided. *Bear Creek, supra* at 1060. Therefore, this Court considers the Ninth Circuit opinions concerning § 907 to be good law and adopts the rationale which supports both the two Ninth Circuit cases and the Fifth Circuit's opinion in *Bear Creek,* supra.

■ State laws are preempted if their operational effect is to "disturb" or "interfere with" a federal program or activity regulated by federal statute. *California v. F.E.R.C.,* 495 U.S. 490, 506–7, 110 S.Ct. 2024, 2033–34, 109 L.Ed.2d 474 (1990). As stated, state law is preempted by conflicting federal law even if the federal law contains no preemptive language, reflects no Congressional intent to preempt, and impacts transactions traditionally regulated by state laws, including transactions involving real property. *Michigan Canners & Freezers Assoc., Inc. v. Agricultural Marketing & Bargaining Board,* 467 U.S. 461, 469–70, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984).

The REA, in order to provide the long term capital needed for the construction of the costly generation and transmission facilities which provide the Generation and Transmission Cooperatives ("G & Ts") member distribution cooperatives with economic long term power, must determine that the security for the various loans is "reasonably adequate." 7 U.S.C. § 904.

Congress, in the REAct gave the REA the right to protect a declared national interest in electrifying rural America and a small measure of safety for ensuring continued existence of the "reasonably adequate" security upon which it bases its decision to make a long term loan. That measure is contained in 7 U.S.C. § 907.

■ As previously stated, the courts are uniform in holding that 7 U.S.C. § 907 requires approval of the REA as a pre-requisite to proposed expropriation. Without the required approval, cooperatives subject to the REAct cannot sell or dispose of assets by any means, contrary state law notwithstanding. The Court in *Pend Oreille, supra,* stated:

"Congress has declared the federal purpose to electrify the American farm. No matter how we characterize the vehicle which gets the electricity there, a state law so written that a state favored utility can by its unilateral action interfere with the federal purpose cannot stand under the Supremacy Clause of the Constitution of the United States."

*Pend Oreille,* 417 F.2d at 202.

Similarly, in *Big Bend,* supra the court reasoned:

"The purpose of the Act is to provide low cost electricity to rural America." *Big Bend,* 618 F.2d at 603. Additionally, but in no way controlling, this Court cannot ignore the potential of similar action by similarly situated communities and the resultant destructive impact on the REA and its stated purpose. Therefore, based upon jurisprudence cited, this Court finds to allow the expropriations would be in direct conflict with and thwart the explicit congressional purpose of the REA. The City of Morgan City expropriation must fall.

City of Morgan City also directs this Court's attention to a state court decision, *City of Rochester v. People Cooperative Power Association, Inc.,* No. C090281 (Minn. 3rd JDC, Olmstead City) for the proposition that Louisiana's expropriation law does not conflict with § 907. The case involved Minnesota's "Quick Take" law which was seeking to condemn, immediately, certain cooperative service rights conferred by state law. Defendants challenged the "Quick Take" law on the grounds that it conflicted on its face with § 907 and was invalid. This case is readily distinguished from the one at issue here, as the REA had issued no administrative decision in the Minnesota case which determines that the proposed condemnation would decrease the ability of the REA to achieve the purpose of the REAct. Further, in apparently almost three years since the Minnesota action began, the Administrator had conducted no analysis, economic or otherwise, to determine what the effect would be on the Peoples or the rural electrification system if Peoples lost the right to service some of its facilities. Further, this Court finds that the Minnesota case is far from a final determination as it is presently on appeal in the higher courts of Minnesota. Therefore, this Court declines to follow the holding in *City of Rochester.*

In the instant case, the REA has made a determination that the City of Morgan City's proposed condemnation would decrease the ability of the REA to serve its purpose. City of Morgan City disputes this determination and contends that the proposed condemnation would actually facilitate rural electrification by making the distribution of electricity more efficient. City of Morgan City contends that because the issue of the wisdom of the taking is disputed, the district court erred in granting a summary judgment to the United States in *Big Bend.* The argument does not follow.

■ REA is the administrative agency charged by Congress with the responsibility for facilitating rural electrification. REA was intended by Congress to determine the appropriate course of conduct to accomplish the legislative purpose. Courts properly give wide latitude to agency determinations in their areas of expertise. *See National Broadcasting Co. v. Federal Communications Commission,* 516 F.2d 1101, 1122 (D.C.Cir.1974) *cert. denied sub nom., Accuracy in Media, Inc. v. National Broadcasting Co.,* 424 U.S. 910, 96 S.Ct. 1105, 47 L.Ed.2d 313 (1976). The standard of review for administrative agency determination is one of arbitrary, capricious, or an abuse of discretion. *See* 5 U.S.C. § 706. Therefore, after determination that the REA has the authority to withhold approval of an expropriation, this Court is not to revisit the merits of the argument presented to the REA rather is to review the administrative agency actions for procedural validity and under an arbitrary and capricious and/or abuse of discretion standard of review. The administrator of the REA through staff reviewed the issues and issued a 28 page report with numerous attachments and studies. As a result of and/or within this study, the administrator withheld his approval of the proposed expropriation. Full explanation was made in the 28 page report. Upon review, the administrator's decision cannot be said to be arbitrary and capricious or an exercise of abuse of discretion, particularly given the value of the property to be expropriated versus the proposed payout, the selection of the City of the densest service population of SLECA for expropriation and the resultant negative impact on SLECA of the expropriation. This is discussed further in review of the Magistrate's ruling below.

### Appeal of Magistrate's Ruling

In the Magistrate's decision of October 22, 1992, Magistrate Judge Methvin found that

the Administrator's decision withholding approval for the expropriation was proper and that no authority required that the REA conduct an evidentiary hearing before issuing a decision under § 907. Agency action taken without a formal evidentiary hearing, but based on an administrative record and subject to judicial review on the basis of that record is constitutional. *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 375–377, 109 S.Ct. 1851, 1860–61, 104 L.Ed.2d 377 (1989).

In this matter the REA compiled a very thorough administrative record and granted an exhaustive decision in which it independently verified and analyzed the facts and logic underlying the submissions by various parties. Therefore, when an agency's determination is based on the administrative record, as in this case, the administrative decision should be reviewed in the light of that record. *Bowles v. U.S. Army Corps of Engineers*, 841 F.2d 112, 116 (5th Cir.) *cert. denied*, 488 U.S. 803, 109 S.Ct. 33, 102 L.Ed.2d 13 (1988).

Judicial review is limited to a review of the administrative record and may only be remanded to the REA for further consideration if this Court finds the decision was arbitrary and capricious in light of the record as a matter of law. The burden of establishing that an agency's actions are arbitrary and capricious lies with the party objecting to it. *Electronic Data Systems Corp. v. N.L.R.B.*, 938 F.2d 570, 573 (5th Cir.1991). This Court finds in a review of the decision rendered on behalf of the REA opposing the expropriation that the decision was not arbitrary and capricious rather that the authority was withheld to prevent a dissipation of the security for loans made by the REA to both SLECA through Cajun.

This Court notes that the federal government, through the REA, has loaned directly or guaranteed loans to Cajun of approximately $3.2 billion. The federal government's security for these loans is limited to the assets of Cajun and the revenue stream resulting from the sale of electric power generated by the facilities constructed by Cajun to its members/owner distribution cooperatives, including SLECA, under the All Requirements Wholesale contracts. Loans for the construction of multi-million dollar generating plants were made on the basis of existing load and anticipated future load of SLECA and Cajun's other member distribution cooperatives with the expectation that those loads would continue and grow in order to generate the revenue stream necessary to repay the loans. The report by the REA details the backgrounds of both Cajun and SLECA including the financial stability of the cooperatives, which is of particular concern to the United States considering the $3.2 billion debt involved. The REA made a detailed analysis of the ability of Cajun and SLECA to repay these loans and the impact of the proposed expropriation on this repayment. Further, the expropriation would result in a loss of operating margins, as the customers sought to be expropriated by the City of Morgan City are located in SLECA's highest density service area. Therefore, expropriation of these customers would reduce the payment base and thereby force higher rates on those being served in less dense areas, thereby frustrating the original intent of the REA, i.e., to provide affordable electric service to the rural areas of this country. Further, the expropriation by stripping SLECA's densest service area could place repayment itself in jeopardy.

Therefore, this Court finds that the REA administrator compiled an administrative record more than 300 pages in length fully detailing its decision, and that the decision issued on behalf of the agency and approved by the administrator was not arbitrary and capricious. The decision of the Magistrate will be UPHELD by this Court.

Further, this Court also finds that the Rural Electrification Act, 7 U.S.C. § 901's stated purpose is to facilitate rural electrification and as a part of its programmatic interest gave the REA Administrator in 7 U.S.C. § 907 the power to approve or withhold approval of disposal which thwarts this purpose, by any means, including condemnation of the REA financed electric cooperative property under state laws. Any holding to the contrary would severely hinder and jeopardize the REA's ability to protect either the

security for its loans and loan guarantees or the overall rural electrification program.

Therefore, considering the foregoing, this Court GRANTS the Motions to Dismiss filed on behalf of the United States of America, the South Louisiana Electric Cooperative Association, and Cajun Electric Power Cooperative, Inc. This Court DENIES the motion for Partial Summary Judgment filed on behalf of the City of Morgan City. Further, this Court DENIES the appeal from Magistrate Judge Methvin's ruling dated October 22, 1992 filed on behalf of the City of Morgan City. The Motion to Strike Documents filed on behalf of the United States of America is rendered MOOT.

THUS DONE AND SIGNED.